**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLIVIA PESCATORE, *et al.*, | Case No. 1:18-mc-00545 (LGS) (SN) |
| *Plaintiffs*, | |
| v. | |
| JUVENAL OVIDIO RICARDO PALMERA PINEDA, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
THE PDVSA SUBSIDIARIES TO VACATE ORDERS, QUASH WRITS
OF EXECUTION, AND DISMISS TURNOVER MOTIONS**

**WHITE & CASE**

701 Thirteenth Street, N.W.
Washington, D.C., 20005
(202) 626-3600

August 13, 2021

*Counsel for Aceites y Solventes Venezolanos
Vassa, S.A., Petro San Felix, S.A., Venfleet
Asphalt, Ltd., Petrowarao, S.A., and
Venezuelan Heavy Industries, C.A.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................ 2

    A.    The *Stansell* and *Pescatore* Actions ................................................. 2

    B.    PDVSA Is An "Agency or Instrumentality" of Venezuela Whose U.S. Assets Are Blocked As A Protective Measure To Preserve Those Assets For The People Of Venezuela ................................................. 5

STATUTORY FRAMEWORK ....................................................................................... 6

ARGUMENT .................................................................................................................. 8

I.    THIS COURT LACKED SUBJECT MATTER JURISDICTION TO ISSUE THE DECEMBER 15 ORDERS AND WRITS OF EXECUTION ............................................. 8

II.    THE COURT LACKED PERSONAL JURISDICTION TO ENTER THE DECEMBER 15 ORDERS OR ISSUE THE WRITS OF EXECUTION ......................... 10

III.    THE ORDERS AND WRITS ARE VOID BASED ON INEFFECTIVE SERVICE ....... 11

IV.    TRIA DOES NOT APPLY TO THE PDVSA SUBSIDIARIES ..................................... 14

    A.    TRIA Applies to "Agencies or Instrumentalities" of State Sponsors of Terrorism Only ................................................................. 14

    B.    Plaintiffs Failed To Prove That The PDVSA Subsidiaries Are "Agencies Or Instrumentalities" Of The FARC .......................................................... 18

    C.    Plaintiffs Have Not Established That The PDVSA Subsidiaries Or The FARC Own The Blocked Assets At Issue ................................................ 23

CONCLUSION ............................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Ansell Healthcare, Inc. v. Maersk Line*,
    545 F. Supp. 2d 339 (S.D.N.Y. 2008)......................................................................14

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
    380 F. Supp. 2d 334 (S.D.N.Y. 2005)......................................................................24

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012)......................................................................................21

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
    137 S. Ct. 1312 (2017)..............................................................................................16

*Brockmeyer v. May*,
    383 F.3d 798 (9th Cir. 2004) ...................................................................................13

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)..................................................................................................18

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
    No. 20-MC-40-LJV, 2021 WL 1884110 (W.D.N.Y. May 11, 2021).........................6

*Cameron v. City of N.Y.*,
    598 F.3d 50 (2d Cir. 2010)........................................................................................23

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948)..................................................................................................21

*City of New York v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011)........................................................................................9

*Cohen v. Empire Blue Cross & Blue Shield*,
    176 F.3d 35 (2d Cir. 1999)........................................................................................16

*Covington Indus., Inc. v. Resintex, A.G.*,
    629 F.2d 730 (2d Cir. 1980)......................................................................................11

*Crossetti v. Cargill, Inc.*,
    No. 3:18-cv-30002, 2018 WL 2770130 (D. Mass. June 8, 2018).............................14

*Development Specialists, Inc. v. Li (In re Coudert Bros. LLP)*,
    No 16-cv-8237, 2017 WL 1944162 (S.D.N.Y. 2017) ..............................................13

*Epperson v. Entm't Express, Inc.*,
   242 F.3d 100 (2d Cir. 2001)..........................................................................8, 11

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
   90 Civ. 7360, 1992 WL 296434 (S.D.N.Y. Oct. 6, 1992) ......................................14

*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*,
   462 U.S. 611 (1983)..............................................................................................16

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)..............................................................................................23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..............................................................................................10

*Grogan v. Garner*,
   498 U.S. 279 (1991)..............................................................................................22

*Harrison v. Republic of Sudan*,
   No. 13-cv-3127, 2017 WL 946422 (S.D.N.Y. Feb. 10, 2017) ................................21

*Hausler v. JP Morgan Chase Bank, N.A.*,
   770 F.3d 207 (2d Cir. 2014)..................................................................................25

*Hausler v. JPMorgan Chase Bank, N.A.*,
   845 F. Supp.2d 553 (S.D.N.Y. 2012),
   *rev'd on other grounds*, 770 F.3d 207 (2d Cir. 2014)..............................................25

*In re Adelphia Communs. Corp. Sec. & Derivative Litig.*,
   No. 03-MD-1529, 2014 WL 6982140 (S.D.N.Y. Dec. 10, 2014) ...............................11, 21, 23

*In re Platinum & Palladium Antitrust Litig.*,
   No. 1:14-cv-9391, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017)..........................10

*Janvey v. Libyan Inv. Auth.*,
   840 F.3d 248 (5th Cir. 2016) ................................................................................16

*King Cnty. v. IKB Deutsche Industriebank AG*,
   769 F. Supp. 2d 309 (S.D.N.Y. Jan. 18, 2011) ......................................................10

*Kirschenbaum v. 650 Fifth Avenue*,
   830 F.3d 107 (2d Cir. 2016)..................................................................................19

*Kirschenbaum v. Assa Corp.*,
   934 F.3d 191 (2d Cir. 2019)..............................................................................21, 25

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)................................................................................................8

*Levin v. Bank of N.Y. Mellon*,
    09 CV 5900, 2013 WL 5312502 (S.D.N.Y. Sept. 19, 2013) ..................................................25

*Levin v. JPMorgan Chase Bank, N.A.*,
    751 F. App'x 143 (2d Cir. 2018) ........................................................................................25

*Marks v. Blount-Lee*,
    No. 16-CV-3524 (JMA) (AYS), 2017 WL 3098094 (E.D.N.Y. July 20, 2017) .....................9

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)..................................................................................................23

*Mohamad v. Palestinian Auth.*,
    566 U.S. 449 (2012)...............................................................................................................19

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg.))*,
    714 F.3d 659 (2d Cir. 2013)..................................................................................................11

*Ochoa-Valenzuela v. Ford Motor Co.*,
    685 F. App'x 551 (9th Cir. 2017) .........................................................................................24

*Peacock v. Thomas*,
    516 U.S. 349 (1996).................................................................................................................8

*Penree v. City of Utica*,
    No. 13-cv-01323, 2017 WL 3437680 (N.D.N.Y. Aug. 10, 2017)........................................24

*Philippines v. Pimentel*,
    553 U.S. 851 (2008).........................................................................................................10, 25

*Plante v. Dake*,
    621 F. App'x 67 (2d Cir. 2015) ..............................................................................................9

*Republic of Sudan v. Harrison*,
    139 S. Ct. 1048 (2019)...........................................................................................................14

*Robers v. United States*,
    572 U.S. 639 (2014)...............................................................................................................15

*Rubin v. Islamic Republic of Iran*,
    138 S. Ct. 816 (2018)...............................................................................................6, 7, 16, 19

*Samantar, v. Yousuf*,
    560 U.S. 305 (2010)...............................................................................................................16

*Traguth v. Zuck*,
    710 F.2d 90 (2d Cir. 1983).......................................................................................................9

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  162 F.3d 724 (2d Cir. 1998).............................................................................14

*Trs. of the United Plant & Production Workers v. Mana Constr. Group*,
  CV 18-4629, 2021 U.S. Dist. LEXIS 143024 (S.D.N.Y, Jul. 30, 2021) ..................12

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
  484 U.S. 365 (1988).......................................................................................15

*Waldman v. PLO*,
  835 F.3d 317 (2d Cir. 2016)............................................................................10

*Wood v. Maguire Auto., LLC*,
  508 F. App'x 65 (2d Cir. 2013) .........................................................................9

**STATUTES AND RULES**

28 U.S.C. § 517..............................................................................................27

28 U.S.C. § 530D............................................................................................18

28 U.S.C. § 624..............................................................................................18

28 U.S.C § 1330..........................................................................................6, 19

28 U.S.C § 1602..............................................................................................6

28 U.S.C. § 1603....................................................................................6, 7, 15, 19

28 U.S.C. § 1604..........................................................................................6, 7

28 U.S.C. § 1605..........................................................................................7, 19

28 U.S.C. § 1605A....................................................................................7, 17, 19

28 U.S.C. § 1605B............................................................................................7

28 U.S.C. § 1606..............................................................................................7

28 U.S.C. § 1607..............................................................................................7

28 U.S.C. § 1608.............................................................................................19

28 U.S.C. § 1609..........................................................................................6, 7

28 U.S.C. § 1610....................................................................................7, 8, 19

28 U.S.C. § 1930.............................................................................................18

v

Berm. Sup. Ct. R. 10/1 .............................................................................................14

Fed. R. Civ. P. 4 ...........................................................................................12, 13, 14

Fed. R. Civ. P. 55 .........................................................................................................9

Fed. R. Civ. P. 60 .............................................................................................9, 11, 14

Fed. R. Evid. 702 .......................................................................................................24

Fed. R. Evid. 801 .................................................................................................23, 24

Fed. R. Evid. 802 .......................................................................................................23

Fed. R. Evid. 803 .......................................................................................................23

N.Y. C.P.L.R. § 301 ...................................................................................................10

N.Y. C.P.L.R. § 302 ...................................................................................................10

## REGULATIONS

Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. pt. 598 .........................25

Foreign Terrorist Organization Sanctions Regulations, 31 C.F.R. pt. 597 ...................25

Global Terrorism Sanctions Regulations, 31 C.F.R. pt. 594 ......................................25

Venezuela Sanctions Regs, 31 C.F.R. pt. 591 ...........................................................25

## MISCELLANEOUS

148 Cong. Rec. 4629 (2002) .......................................................................................17

148 Cong. Rec. 10312 (2002) .....................................................................................17

148 Cong. Rec. 23122 (2002) ...............................................................................17, 18

Brief of the United States, *In re: 650 Fifth Ave. & Related Props.*,
    No. 17-3258(L), ECF No. 105 (2d Cir. Aug 31, 2018) ......................................25

H.R. 3210, 107th Cong. (Nov. 19, 2001)....................................................................17

H.R. 3210, 107th Cong. (Nov. 29, 2001)....................................................................17

H.R. Rep. No. 107-779 (2002)......................................................................................8

Office of Foreign Assets Control, List of Specially Designated Nationals and
    Blocked Persons...................................................................................................25

Press Release, Treasury Sanctions Venezuela's State-Owned Oil Company Petróleos de
    Venezuela, S.A., U.S. Dep't of the Treasury (Jan. 28, 2019)...................................................6

Third-party defendants Aceites y Solventes Venezolanos Vassa, S.A. ("ASV"), Petro San Felix, S.A., Venfleet Asphalt, Ltd., Petrowarao, S.A., and Venezuelan Heavy Industries, C.A. ("VHI") (collectively, the "PDVSA Subsidiaries") submit this memorandum in support of their Motion to Vacate the Court's Orders dated December 15, 2020 (ECF Nos. 114/40),[1] Quash the Writs of Execution issued pursuant to those Orders, and Dismiss Turnover Motions.[2]

## PRELIMINARY STATEMENT

Plaintiffs are the victims of heinous acts of terrorism perpetrated against them and their families by the defunct Colombian narco-terrorist organization Fuerzas Armadas Revolucionarias de Colombia (the "FARC"). But neither Petróleos de Venezuela, S.A. ("PDVSA") — Venezuela's state-owned oil company — nor its Subsidiaries are responsible for those acts or for satisfying Plaintiffs' default judgments against the FARC. Yet Plaintiffs nonetheless obtained *ex parte* writs of execution in respect of Citibank, N.A. and Sumitomo Mitsui Banking Corp. (together, "Garnishees") on the purported basis that they hold blocked assets of the PDVSA Subsidiaries allegedly available for attachment under the Terrorism Risk Insurance Act of 2002 ("TRIA"). For the following reasons, the orders authorizing the writs of execution are void and must be vacated, the writs must be quashed, and Plaintiffs' pending turnover motions must be denied:

*First*, a judgment creditor may not collect his judgment from a party that is not liable for that judgment. Thus, since Plaintiffs are attempting to hold the PDVSA Subsidiaries liable for their default judgments against the FARC, they are required to establish an independent basis for

---

[1] Unless otherwise specified, all citations to "ECF Nos. __/__" refer to documents filed in both the *Stansell* and *Pescatore* actions in substantively identical form. The ECF numbers refer to the docket entries for the *Stansell*/*Pescatore* actions, respectively.

[2] The *Stansell* and *Pescatore* cases are designated as related cases and involve identical submissions and resulting orders regarding the alleged status of the PDVSA Subsidiaries as purported agencies or instrumentalities of the FARC under the Terrorism Risk Insurance Act. The actions, however, have not been consolidated for all purposes and, as a result, the PDVSA Subsidiaries are filing this Motion to Vacate in both the *Stansell* and *Pescatore* actions.

subject matter and personal jurisdiction over the PDVSA Subsidiaries.  Plaintiffs failed to do so.

*Second*, this Court lacks any basis for exercising personal jurisdiction over the PDVSA Subsidiaries under the minimum contacts requirements derived from the Due Process Clause. Indeed, Plaintiffs have never attempted to make such a showing.

*Third*, the orders and writs are void for lack of personal jurisdiction because, Plaintiffs failed to properly serve the PDVSA Subsidiaries, including under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

*Fourth*, TRIA does not apply because: (i) the legal term of art "agency or instrumentality" in TRIA refers only to an "agency or instrumentality" of a designated state sponsor of terrorism and not that of a non-state actor; (ii) Plaintiffs failed to prove that the PDVSA Subsidiaries are "agencies or instrumentalities" of the FARC under TRIA; (iii) Plaintiffs failed to prove that PDVSA Subsidiaries own the blocked assets at issue, as they must under TRIA; and (iv) PDVSA's property interests, which the United States protectively blocked under the Venezuela sanctions program, are not available to satisfy judgments of a "terrorist party" under TRIA.

## BACKGROUND

### A.     The *Stansell* and *Pescatore* Actions

In these related actions, the *Stansell* plaintiffs and the *Pescatore* plaintiffs (together, "Plaintiffs") seek to enforce separate default judgments against the FARC entered under the Anti-Terrorism Act ("ATA").  The *Stansell* plaintiffs hold a more-than-$318 million default judgment issued by the U.S. District Court for the Middle District of Florida in June 2010.  *See Stansell* ECF No. 5.  The *Pescatore* plaintiffs hold a $69 million default judgment issued by the U.S. District Court for the District of Columbia in January 2018.  *See Pescatore* ECF No. 1.

Plaintiffs then each registered their default judgments in this Court in 2016 and 2018 and began separate enforcement proceedings against assets of various alleged "agencies or

instrumentalities" of the FARC under the Terrorism Risk Insurance Act ("TRIA").  *See Stansell* ECF No. 5; *Pescatore* ECF No. 1.  The *Stansell* action was assigned to Judge Andrew L. Carter. *Pescatore* was assigned to Judge J. Paul Oetken and was later reassigned to Judge Carter.

Although the *Stansell*s and the *Pescatore*s have a Confidential Joint Prosecution Sharing Agreement, they have continued to prosecute their own, distinct actions, but in some instances — including those relevant to this motion — Plaintiffs filed substantively identical documents in both cases.  *See* ECF Nos. 111/37, 119/46.

In December 2020, Plaintiffs commenced proceedings in their respective actions to satisfy their default judgments against the FARC from blocked assets of various subsidiaries of PDVSA — Venezuela's state-owned oil company.  Specifically, on December 10, 2020, Plaintiffs filed substantively identical *ex parte* motions seeking (i) a declaration that various PDVSA subsidiaries are "agencies or instrumentalities" of the FARC and (ii) an order authorizing writs of execution against the blocked assets of those subsidiaries.  *See* ECF Nos. 111/37.  Plaintiffs filed their *ex parte* motions under seal.  *See* ECF Nos. 113/39.

The Court granted Plaintiffs' motions on December 15, 2020, finding that various PDVSA subsidiaries, including movants here, are each an "agency or instrumentality" of the FARC whose assets are "subject to attachment and execution pursuant to TRIA," and authorizing further writs of execution.  *See* ECF Nos. 114/40 ("December 15 Orders") at 2.  The Clerk of Court issued writs of execution the next day as to blocked accounts in the name of PDVSA subsidiaries Petrocedeño, Petrowarao, and VHI held by Sumitomo.  On December 23, 2020, the Clerk of Court issued writs of execution as to blocked accounts in the name of PDVSA subsidiaries ASV, Petro San Felix, and Venfleet Asphalt held by Citibank.  *See id.* at Ex. 1, p. 6.  Plaintiffs purported to serve the writs of execution on each of the PDVSA Subsidiaries via "first class mail," with no indication

that return receipt was requested, on December 19 and 30, 2020.  *See* Affs. of Service, *Stansell* ECF Nos. 243 & 245 and *Pescatore* ECF Nos. 109 & 111.

On January 19, 2021, Plaintiffs moved for turnover with respect to the blocked accounts of the PDVSA Subsidiaries at Citibank and Sumitomo.  *See* ECF Nos. 141/68, 145/72, and 147/74. Plaintiffs purported to serve the turnover motions on the PDVSA Subsidiaries via "certified or registered mail."  *See id.*  In response to the turnover motions, in February 2021, the Garnishees indicated that they intended to file claims in the nature of interpleader.  ECF No. 87 at 4.

On February 17, 2021, Judge Carter recused himself from both the *Stansell* and *Pescatore* actions.  The *Stansell* action was reassigned to Judge Schofield, and the *Pescatore* action was reassigned to Judge Engelmayer.  *See Stansell* and *Pescatore* docket entries dated Feb. 17, 2021.

On February 23, 2021, the Garnishees filed a letter submitting that the *Stansell* and *Pescatore* actions, as well as a separate action filed by a competing FARC judgment creditor, Antonio Caballero, are related and requested the cases be assigned to a common judge.  ECF Nos. 185/95.  Judge Schofield granted the Garnishees' application in part on March 16, 2021, accepting the *Stansell* and *Pescatore* actions as related and reassigning the *Pescatore* action to Judge Schofield.[3]  *See Stansell* ECF No. 194 at 2; *Pescatore* dkt. entry dated March 5, 2021.  The Court also instructed the Garnishees to respond to Plaintiffs' turnover motions by filing third party complaints in the nature of interpleader.  *Id.*; *see also* ECF Nos. 196/102.

On April 15, 2021, Plaintiffs and the Garnishees stipulated — and the Court ordered — that, because the turnover motions filed in the *Stansell* and *Pescatore* actions are "substantively identical," the "Garnishees shall file their Interpleader Complaints only on the *Stansell* docket;"

---

[3] Judge Schofield declined to accept the *Caballero* action as related, however, because "it [was] in a different procedural posture" and "there is not complete overlap as to the alleged [FARC] agencies and instrumentalities" at issue.  *Stansell* ECF No. 194 at 2.

and "[t]he *Pescatore* turnover motions shall be resolved through the Interpleader Complaints." ECF Nos. 199/105 (Stipulation); 214/107 (Order).   The Garnishees filed their interpleader complaints on April 29 and 30, 2021.  *See Stansell*, ECF Nos. 227, 236, & 238.[4]

Plaintiffs and Caballero, a third-party defendant named in the interpleader complaints, have answered the interpleader complaints and filed cross-claims attacking each other's claims to the blocked assets at issue.  Among other things, Caballero alleges that Plaintiffs have collected their full compensatory damages under TRIA, and Plaintiffs assert that Caballero's judgment is void because Caballero was not a U.S. national at the time of his injuries.  *See Stansell*, ECF Nos. 261-64, 269-72, 279.[5]

**B.     PDVSA Is An "Agency or Instrumentality" of Venezuela Whose U.S. Assets Are Blocked As A Protective Measure To Preserve Those Assets For The People Of Venezuela**

PDVSA is the national oil company of Venezuela and an "agency or instrumentality" of Venezuela presumptively immune from the jurisdiction of U.S. courts under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602-1611 ("FSIA").  Conspicuously, Plaintiffs have failed to serve PDVSA with any process to give PDVSA the requisite notice of these proceedings under the FSIA.  This omission is glaring because the predicate for Plaintiffs' enforcement actions turns on their allegations, albeit conclusory, as to PDVSA.  In January 2019, the United States recognized the Interim Government led by Interim President Juan Guaidó as the only legitimate

---

[4] Sumitomo also filed an interpleader complaint with respect to Petrocedeño, S.A., a subsidiary of PDVSA not presently before the Court.  *See Stansell* ECF No. 234.  The arguments that the PDVSA Subsidiaries raise here would apply equally to Petrocedeño, S.A. such that any vacatur as to them would apply to Petrocedeño, S.A. regardless of whether it appears despite apparent defective service as to it.

[5] The *Stansell* plaintiffs independently may be unable to satisfy TRIA's elements, as they have already recovered in excess of their $106,010,000 compensatory damages award.  The issue of whether the *Stansell* Plaintiffs have indeed exceeded this compensatory damages threshold is on appeal at the Eleventh Circuit (*see Stansell v. FARC*, No. 20-13660 (11th Cir.)), and it is the subject of cross-claims by third-party defendant Caballero in this action.  As a result, the Court should deny Plaintiffs' turnover motions until the Eleventh Circuit renders its decision.  The PDVSA Subsidiaries reserve the right to request dissolution of the writs and vacatur of the orders on that independent basis.

government of Venezuela.  *See Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No.

20-MC-40, 2021 WL 1884110, at *2-3 (W.D.N.Y. May 11, 2021) (describing transition of power

in Venezuela following 2018 presidential election).  As a protective measure, to prevent PDVSA's

property from diversion by the illegitimate regime of former Venezuelan president Nicolás

Maduro and "preserve these assets for the people of Venezuela," the U.S. Department of the

Treasury's Office of Foreign Assets Control ("OFAC") designated PDVSA as a Specially

Designated National and blocked all PDVSA assets subject to U.S. jurisdiction, including those of

its subsidiaries.  Press Release, Treasury Sanctions Venezuela's State-Owned Oil Company

Petróleos de Venezuela, S.A., U.S. Dep't of the Treasury (Jan. 28, 2019),

(https://home.treasury.gov/news/press-releases/sm594).

## STATUTORY FRAMEWORK

TRIA § 201 is codified as a note to the Foreign Sovereign Immunities Act of 1976

("FSIA"), 28 U.S.C §§ 1330, 1602, *et seq.*  Accordingly, the FSIA and its comprehensive

framework play a critical role in resolving this action.

The FSIA, enacted in 1976, "grants foreign states and their agencies and instrumentalities

immunity from suit in the United States (called jurisdictional immunity) and grants their property

immunity from attachment and execution in satisfaction of judgments against them."  *Rubin v.*

*Islamic Republic of Iran*, 138 S. Ct. 816, 820 (2018); 28 U.S.C. §§ 1604, 1609.

Section 1603(a) of the FSIA defines a "foreign state" to include any "agency or

instrumentality of a foreign state," which is defined in the FSIA as any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority
of whose shares or other ownership interest is owned by a foreign state or political
subdivision thereof, and

(3) which is neither a citizen of a State of the United States . . . nor created under
the laws of any third country.

28 U.S.C. § 1603(b).

Section 1604 of the FSIA provides that an entity qualifying as a foreign state "shall be immune from the jurisdiction of the courts of the United States and of the States" subject to certain enumerated exceptions under §§ 1605-1607. The enumerated exceptions to jurisdictional immunity include, *inter alia*, an exception for certain acts by designated state sponsors of terrorism (§ 1605A (enacted in 2008 to replace former § 1605(a)(7))) and an exception applicable to any foreign state for acts of international terrorism occurring in the United States (§ 1605B).

Section 1609 similarly establishes that a foreign state's "property in the United States" "shall be immune from attachment arrest and execution" subject to enumerated exceptions. Section 1610 sets for exceptions to attachment and execution immunity for certain property, but only in respect of judgments against foreign states or its agencies or instrumentalities for which they lacked immunity under §§ 1605 and 1605A (and former § 1605(a)(7)). Section 1610(f)(1) adds that property of a foreign state that is otherwise blocked pursuant to certain U.S. economic sanctions laws is available for attachment and execution in respect of a judgment entered against a foreign state under §§ 1605(a)(7) or 1605A (i.e., the exception for designated state sponsors of terrorism). Section 1610(g) similarly makes the property of agencies or instrumentalities of a foreign state available for attachment or execution in respect of a judgment under §§ 1605(a)(7) or 1605A against the foreign state without regard to the separate juridical status of the foreign state's agencies or instrumentalities. *See Rubin,* 138 S. Ct. at 822.

In 2002 Congress enacted TRIA § 201, which is codified as a note to 28 U.S.C. § 1610. Section 201(a) of TRIA provides:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or [former] 1605(a)(7) . . . , the blocked assets of that

terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

Section 201(d)(4) defines "terrorist party" to mean "a terrorist, a terrorist organization . . . or a foreign state designated as a state sponsor of terrorism." Thus, like § 1610(f), TRIA § 201 builds upon the availability of blocked assets of terrorist parties and their agencies and instrumentalities under § 1610(f)(1). *See* H.R. Rep. No. 107-779 at 27 (2002) (Conf. Rep.).

## ARGUMENT

### I.     THIS COURT LACKED SUBJECT MATTER JURISDICTION TO ISSUE THE DECEMBER 15 ORDERS AND WRITS OF EXECUTION

Plaintiffs seek to hold the PDVSA Subsidiaries liable for Plaintiffs' default judgments against the FARC.  To this end, Plaintiffs obtained an ex parte order from this Court determining that the PDVSA Subsidiaries are "agencies or instrumentalities" of the FARC within the meaning of TRIA.  *See* ECF Nos. 111, 114.  But a federal judgment creditor seeking to impose liability on a third party "not already liable for that judgment" must bring a new action that establishes an "independent basis" for the court's subject matter jurisdiction.  *Peacock v. Thomas*, 516 U.S. 349, 357 (1996); *see also Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 104 (2d Cir. 2001) (concluding that efforts to collect judgments by shifting liability to a new party create an independent controversy that does not fall within court's ancillary jurisdiction); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (holding that a party seeking to enforce a settlement agreement of a concluded action was required to establish an independent basis for jurisdiction over the enforcement proceeding).

Plaintiffs failed to establish an independent basis for jurisdiction in these enforcement actions.  Indeed, Plaintiffs' *ex parte* motions for writs of execution were based on purely conclusory allegations that various entities owned by PDVSA, including the PDVSA Subsidiaries,

are "agencies or instrumentalities" of the FARC.  ECF Nos. 111/37 at 9-10, 12-14.  On that conclusory basis, Plaintiffs erroneously argued that they were immediately entitled to attach and execute upon the blocked assets of the PDVSA Subsidiaries under TRIA without any finding of liability against those entities (and without affording them notice or an opportunity to be heard). *See* ECF Nos. 111/37 at 20.

Plaintiffs' conclusory allegations fail to establish subject matter jurisdiction in these actions and the December 15 Orders and the writs authorized by those orders are void and must be vacated. *See, e.g.*, *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 65-66 (2d Cir. 2013) (affirming dismissal because "conclusory" allegations failed to establish subject matter jurisdiction); *see also Plante v. Dake*, 621 F. App'x 67, 69 (2d Cir. 2015) (summary order) (affirming dismissal for lack of jurisdiction because complaint failed to allege Article III standing); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011) (holding vacatur mandatory under Rule 60(b)(4) where the rendering court "lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law") (quotation marks omitted); *Marks v. Blount-Lee*, No. 16-CV-3524 (JMA) (AYS), 2017 U.S. Dist. LEXIS 113384, at *7 (E.D.N.Y. July 20, 2017) (citing Rule 55(c) and 60(b)(4) of Federal Rules of Civil Procedure and holding: "If a court lacks subject matter jurisdiction to adjudicate a claim, then any order entered by that court is void.") *see also Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983) (finding abuse of discretion under Rule 55(c) where court failed to vacate order that was "functionally equivalent to an entry of default").

Moreover, because Plaintiffs' enforcement efforts against assets of the PDVSA Subsidiaries are premised entirely on conclusory allegations regarding PDVSA's purported relationship with the FARC, PDVSA is a necessary and indispensable party that Plaintiffs could

9

not join in a subsequent action because PDVSA is presumptively immune from jurisdiction under

the FSIA.  *See Philippines v. Pimentel*, 553 U.S. 851, 865 (2008) (holding "the District Court and

the Court of Appeals failed to give full effect to sovereign immunity when they held the action

could proceed without" necessary and indispensable foreign sovereign and dismissing action).

## II.    THE COURT LACKED PERSONAL JURISDICTION TO ENTER THE DECEMBER 15 ORDERS OR ISSUE THE WRITS OF EXECUTION

Plaintiffs failed to establish that the Court had personal jurisdiction over the PDVSA

Subsidiaries such that the Court could order the PDVSA Subsidiaries to pay the underlying default

judgment against the FARC.  *See King Cnty. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d

309, 313 (S.D.N.Y. Jan. 18, 2011) (holding that plaintiffs bear the burden to establish personal

jurisdiction as to each defendant).  Indeed, Plaintiffs were required, but failed, to show that: (1)

the PDVSA Subsidiaries were properly served, (2) the Court had a statutory basis for exercising

personal jurisdiction, and (3) the exercise of personal jurisdiction comported with constitutional

due process.  *See In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391, 2017 WL

1169626, at *39 (S.D.N.Y. Mar. 28, 2017).

In particular, Plaintiffs fail to make *any* allegations of personal jurisdiction as to ASV,

Petro San Felix, Venfleet Asphalt, or VHI.  *See* ECF Nos. 111/37.  Instead, Plaintiffs merely list

these PDVSA subsidiaries as agencies or instrumentalities of the FARC because they are owned

by PDVSA.  *Id.* at 14 & 21.  *See Goodyear*, 564 U.S. at 923; *Waldman v. PLO*, 835 F.3d 317, 335

(2d Cir. 2016) ("The relationship between the defendant and the forum 'must arise out of contacts

that the defendant himself creates with the forum.'") (quoting *Walden v. Fiore*, 571 U.S. 277, 284

(2014)).  With respect to Petrowarao, Plaintiffs allege in conclusory fashion that Petrowarao has

been "named" in unspecified "federal indictments involving U.S. money laundering."  ECF Nos.

111/37 at 12.  Although Plaintiffs repeatedly cite the Superseding Indictment of Nicolas Maduros

Moros, Petrowarao is not mentioned, let alone "named," anywhere in that indictment. *See generally* ECF No. 109-5. *Cf. O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg.))*, 714 F.3d 659, 671, 676 (2d Cir. 2013) (holding allegations of money laundering were "not enough for personal jurisdiction purposes" because they do not show conduct "expressly aimed at the United States"); *see also In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, No. 03-MD-1529, 2014 WL 6982140, at *10 (S.D.N.Y. Dec. 10, 2014) (holding indictments are inadmissible hearsay).

Having failed to allege (let alone prove) any jurisdictional facts concerning the PDVSA Subsidiaries, Plaintiffs failed to establish personal jurisdiction over them and the December 15 Orders and ensuing writs are therefore void and must be vacated. *Covington Indus., Inc. v. Resintex, A.G.*, 629 F.2d 730, 733-35 (2d Cir. 1980) (affirming vacatur under Rule 60(b)(4) of default judgment where rendering court lacked personal jurisdiction). Likewise, the turnover motions must also be denied and this action dismissed for lack of personal jurisdiction over the PDVSA Subsidiaries.

## III.   THE ORDERS AND WRITS ARE VOID BASED ON INEFFECTIVE SERVICE

As stated above, Plaintiffs were required to bring an independent action against the PDVSA Subsidiaries in order to attempt to hold them liable for their default judgments against the FARC. *See Epperson*, 242 F.3d at 104. Had Plaintiffs done so, they would have been required to serve the PDVSA Subsidiaries — which comprise four Venezuelan and one Bermudian corporation — under Rules 4(h)(2) and (f)(1) of the Federal Rules of Civil Procedure. Properly followed, these Rules required Plaintiffs to serve each of the PDVSA Subsidiaries with a summons and complaint in accordance with the Hague Service Convention, a treaty to which Venezuela, the United States, and Bermuda are parties. *See* Fed. R. Civ. P. 4(f)(1)-(3); *see also* Hague Service Convention, 20 U.S.T. 361. Plaintiffs did not do so.

11

Initially, Plaintiffs failed to comply with Rule 4 because they did not serve any of the PDVSA Subsidiaries with a summons or a complaint.  *See* Fed. R. Civ. P. 4(c)(1) ("A summons must be served with a copy of the complaint."); *see also* Fed. R. Civ. P. 4(a)(1) (providing that the summons must, among other things "state the time within which the defendant must appear and defend").  In fact, the dockets reflect that Plaintiffs never even requested the clerk issue summonses for the PDVSA Subsidiaries.  Rather than comply with Rule 4, Plaintiffs commenced their proceedings against the PDVSA Subsidiaries by filing *ex parte* motions under seal.  *See* ECF Nos. 111/37.  Plaintiffs first purported to serve the PDVSA Subsidiaries on December 19 and 30, 2020, when they purportedly sent each PDVSA Subsidiary a copy of the writs of execution by international first class mail, with no signed receipt required.  *See* ECF Nos. 243/109, 245/111.  Even if service by mail was authorized (it was not), Plaintiffs' failure to provide a summons means there was no service of process at all.  *See Trs. of the United Plant & Production Workers v. Mana Constr. Group*, CV 18-4629, 2021 U.S. Dist. LEXIS 143024, at *82 (S.D.N.Y, Jul. 30, 2021) ("[F]ailure to serve a summons constitutes a flagrant disregard of Rule 4 rendering service of process 'fatally defective.'") (collecting cases)).

Further, Plaintiffs failed to use a method of service authorized by the Hague Service Convention.  In acceding to the Hague Service Convention, Venezuela objected to service of process or other judicial documents by mail.  *See* Hague Service Convention, art. 10 ("*Provided the State of destination does not object*, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad[.]" (emphasis added)); Decl. 3 of Venezuela to the Hague Service Convention (objecting "to the transmission of documents through postal channels").  Venezuela also conditioned its accession on the requirement that all service documents be in Spanish.  *See* Decl. 1 of Venezuela to the Hague Convention

12

(documents "will be accepted only when they are properly translated into the Spanish language").

Plaintiffs did not comply with any of these service requirements.  They did not even attempt to provide the PDVSA Subsidiaries notice of their *ex parte* motions for a determination that the PDVSA Subsidiaries are agencies or instrumentalities of the FARC.  Then, Plaintiffs first purported to serve the PDVSA Subsidiaries by sending copies of the writs of execution — but no translations — by "international first class mail" to the PDVSA Subsidiaries at addresses in Venezuela and, in the case of Venfleet Asphalt, Bermuda.  *See* Affs. of Service, *Stansell* ECF Nos. 243, 245; *Pescatore* ECF Nos. 109, 111.

While Bermuda has not explicitly objected to service by mail via the Hague Convention, the Court must also determine whether such service is "affirmatively authorized by some provision in federal law."  *Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir. 2004); *see also Dev. Specialists, Inc. v. Li (In re Coudert Bros. LLP)*, No 16-cv-8237, 2017 WL 1944162, at *6-8 (S.D.N.Y. 2017) (holding that service via mail to a defendant in a country party to the Hague Convention is not an "internationally agreed means of service" under Rule 4(f)(1)).  In *Development Specialists*, the court held that because Article 10 of the Hague Service Convention does not affirmatively authorize service by mail, but rather does not prohibit such service, that service by mail is not an "internationally agreed means of service" for the purpose of Rule 4(f)(1) service.  *Id.* at *8. Plaintiffs similarly could not have served Venfleet Asphalt pursuant to Rule 4(f)(2)(A) because Bermuda does not authorize service by mail in its domestic courts.  Berm. Sup. Ct. R. 10/1 (service must be "served personally on each defendant"); *see also Crossetti v. Cargill, Inc.*, No. 3:18-cv-30002, 2018 WL 2770130, at *3 (D. Mass. June 8, 2018) ("To state the obvious: service by mail is not personal service[.]") (citation omitted)).  Nor is there any evidence that Plaintiffs sought to comply with Rule 4(f)(2)(B) to effect service via letters rogatory to the appropriate foreign

13

authority. As such, the only mechanism by which Plaintiffs could have effected service by mail is pursuant to Rule 4(f)(2)(C)(ii), which they failed to do. *See Ansell Healthcare, Inc. v. Maersk Line*, 545 F. Supp. 2d 339, 342 (S.D.N.Y. 2008) (finding plaintiffs did not comply with Rule 4(f)(2)(C)(ii) because service not initiated through clerk of court).

Accordingly, because Plaintiffs failed completely to serve any summonses or notice of the application for writs of execution, and because service of the writs upon the PDVSA Subsidiaries was improper under the Hague Service Convention, as well as the laws of Bermuda, the December 15 Orders must be vacated, the writs quashed, and the turnover motions denied. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998) (reversing default judgment in light of D.C. Circuit holding that judgment was void for lack of personal jurisdiction due to defective service); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 90 Civ. 7360, 1992 WL 296434, at *1 (S.D.N.Y. Oct. 6, 1992) (vacating default judgment because plaintiff failed to effect proper service); *see also Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019) (holding default judgment void for lack of personal jurisdiction due to defective service); *Sartor*, 70 F. App'x at 13 (holding when default judgment is void, the court must grant vacatur).

## IV.   TRIA DOES NOT APPLY TO THE PDVSA SUBSIDIARIES

### A.   TRIA Applies to "Agencies or Instrumentalities" of State Sponsors of Terrorism Only

Plaintiffs misinterpret TRIA, conflating the term "agency or instrumentality" with the word "agent." *See* ECF Nos. 111/37 at 3-4 (arguing that any person that has ever "supplied financial or money laundering services to the FARC" "*directly or indirectly*" is an agency or instrumentality of the FARC). But an "agency or instrumentality" is a legal term of art specifically defined in § 1603(b) of the FSIA. Section 1603 provides that the definitions contained in this section apply "[f]or purposes of this chapter." TRIA is codified as part of "this chapter" — Chapter 97 governing

14

Jurisdictional Immunities of Foreign States.  Thus, as used in TRIA § 201(a), the term "agency or instrumentality" should be given the meaning ascribed to it under § 1603(b).  *See generally Robers v. United States*, 572 U.S. 639, 644 (2014) (stating "identical words used in different parts of the same statute are . . . presumed to have the same meaning").

Additionally, the Supreme Court expressly rejected the notion that "agency or instrumentality" can be "given the meaning of 'any thing or person through which action is accomplished.'"  *Samantar*, *v. Yousuf*, 560 U.S. 305, 315 (2010) (quotation omitted).   Yet Plaintiffs have reduced this specific legal term of art to mean exactly that.  *See, e.g.*, ECF No. 111/37 at 3-4 (asserting that "any individual members, divisions and networks of any blocked [entity] that has '*ever*' been involved in [FARC drug trafficking] or that has '*ever*' supplied financial or money laundering services to the FARC . . . '*directly or indirectly*'" is a FARC "agency or instrumentality"); *contra Cohen v. Empire Blue Cross & Blue Shield*, 176 F.3d 35, 41-42 (2d Cir. 1999) (holding that an "agent" is not an "agency" for purposes of Title 28); *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 259 (5th Cir. 2016) (holding "the term '*agent*' should not to be confused with 'agency' in the phrase '*agency* or instrumentality'").

The legislative history establishes that "agency or instrumentality" in TRIA means the "agency or instrumentality of a foreign state" adjudged liable for a terrorism-related judgment, resolves the matter.  *See generally Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1321 (2017) (examining the FSIA's language, history, and structure to determine applicable standard for subject-matter jurisdiction).   Congress sought to overcome the presumption of juridical separateness with respect to the agencies and instrumentalities of state sponsors of terrorism.  *See Rubin,* 138 S. Ct. at 822 (stating that *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba* ("*Bancec*"), 462 U.S. 611, 628 (1983) establishes that, "as a

default, . . . agencies and instrumentalities of a foreign state [are] to be considered separate legal entities that cannot be held liable for acts of the foreign state.").  TRIA was enacted to permit victims of terrorism who had successfully sued state sponsors of terrorism to have their judgments "satisfied against the assets that have been seized from primarily two countries that have been involved — Iran and Iraq."  148 Cong. Rec. 10312 (2002); *see also id.* at 23121.

At the time of TRIA's passage, such victims had obtained numerous judgments against Iran, Iraq, and the other designated state sponsors of terrorism.  *See id.* at 10311 (2002) (statement of Sen. Allen).  But these plaintiffs had been unable to satisfy those judgments from the more than $3.7 billion in blocked or frozen assets belonging to those state sponsors of terrorism and their agencies or instrumentalities.  *See id.*  Thus, Congress enacted TRIA "for purposes of enforcing a judgment against a terrorist state," to make clear that the law "does not recognize any juridical distinction between a terrorist state and its agencies or instrumentalities." 148 Cong. Rec. 23122.

The term "agency or instrumentality" was added to the text of draft § 201(a) at the same time as its companion language — "for which a terrorist party is not immune under section 1605A or 1605(a)(7)" — signifying that Congress intended for plaintiffs with judgments against state sponsors of terrorism to be able to satisfy their judgments against blocked property of that state's agencies or instrumentalities.  *Compare* H.R. 3210 § 15(f), 107th Cong. (Nov. 19, 2001) (omitting reference to "agencies or instrumentalities") *with* H.R. 3210 § 15(e), 107th Cong. (Nov. 29, 2001) (including quoted text).  There is not a single reference in the legislative history that indicates Congress intended the broader interpretation of the phrase proffered by Plaintiffs.

Further, the final enacted text of TRIA was drafted by Senator Harkin and adopted wholesale from a bill that Senator Harkin explained "only applie[d] to 'terrorist states.'" 148 Cong. Rec. 10352, 4629 (2002) (statement of Sen. Harkin); *see* S. 2134, 107th Cong. (Apr. 16, 2002)

("To allow American victims of state sponsored terrorism to receive compensation from blocked assets of those states."). In his floor speech urging final passage of TRIA, Senator Harkin further explained that TRIA "expressly addresses" and thereby resolves the then-existing

> dispute over the availability of "agency and instrumentality" assets to satisfy judgments against a terrorist state itself. Let there be no doubt on this point. [TRIA] operates to strip a terrorist state of its immunity from execution or attachment in aid of execution by making the blocked assets of that terrorist state, including the blocked assets of any of its agencies or instrumentalities, available for attachment and/or execution of a judgment issued against that terrorist state.

148 Cong. Rec. 23122 (2002). Thus, the legislative history contradicts Plaintiffs' theory.

Further, reading "agency or instrumentality" to be synonymous with something akin to a common law "agent" would be a radical departure from the meaning ascribed to the phrase throughout the U.S. Code, which always denotes a relationship between a government and a separate or inferior governmental body. *See, e.g.*, 28 U.S.C. § 530D(a)(1)(C)(i)-(ii) (referencing "the United States (including any agency or instrumentality thereof)"); *id.* § 624(2) (directing every "department, agency, or instrumentality" of "the Government" to comply with requests); *id.* § 1930 note (discussing the "Administrative Office of the [U.S.] Courts, or any other agency or instrumentality of the United States"); *cf. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 n.3 (2006) (Scalia, J.) ("Our more natural reading is confirmed by the use of the word 'contract' elsewhere in the [U.S.] Code."). Looking even more broadly, in the 2003 version of the U.S. Code, reflecting the text as it stood at the time of TRIA's enactment, the term appeared in 558 different sections. *See* Exhibit 1 (search results for "agency or instrumentality" from the 2003 version of the U.S. Code as published on the Office of the Law Revision Counsel's website). The abundant use of the term in the U.S. Code demonstrates that Congress understands the term "agency or instrumentality" to refer to the federal government or of a state, local, tribal, or foreign government. *See* Exhibit 2 for examples.

Thus, Plaintiffs' reading is entirely inconsistent with the natural reading of "agency or instrumentality" in its specific context of the FSIA, in the context of Title 28, and in the context of the whole of the *corpus juris*.  *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 455 (2012) ("Congress remains free, as always, to give [a] word a broader or different meaning.  But before we will assume it has done so, there must be *some* indication Congress intended such a result." (emphasis in original)).

The PDVSA Subsidiaries acknowledge that the Second Circuit in *Kirschenbaum v. 650 Fifth Avenue* held that § 1603(b)'s definition of "agency or instrumentality" does not apply to the same phrase used later in the same statutory framework.  But the Court did so in the context of a TRIA action seeking to attach property of a state sponsor of terrorism (Iran), the judgment debtor, "held in the hands of" an entity that, but for the fact it was a citizen of a U.S. state, was an "agency or instrumentality" of Iran as defined in § 1608(b).  830 F.3d 107, 132-35 (2d Cir. 2016), *abrogated by Rubin,* 138 S. Ct. 816 (2018).  Moreover, the plaintiffs had already obtained subject matter jurisdiction with regard to Iran by way of §§ 1330(a), 1605A and 1605(a)(7).  *Id.* at 123 n.8. Nonetheless, the PDVSA Subsidiaries submit that *Kirschenbaum* was wrongly decided and they preserve all available arguments for further appellate review.  The PDVSA Subsidiaries also note that the Second Circuit issued its decision without analyzing any legislative history.  Finally, the U.S. Supreme Court's decision in *Rubin* reversed *Kirschenbaum*'s erroneous interpretation of § 1610(g) of the FSIA, thus calling the remainder of the decision into question.  But even were *Kirschenbaum* controlling, Plaintiffs failed to establish the purported "agency or instrumentality" status of the PDVSA Subsidiaries under even *Kirschenbaum*'s test, as demonstrated below.

**B.      Plaintiffs Failed To Prove That The PDVSA Subsidiaries Are "Agencies Or Instrumentalities" Of The FARC**

Plaintiffs procured orders and writs from this Court with far-reaching consequences on an

astoundingly bare evidentiary record.  Indeed, Plaintiffs failed to submit *any* evidence concerning any alleged wrongdoing by the PDVSA Subsidiaries (nor can they, as neither PDVSA nor its subsidiaries are or have ever been "agencies or instrumentalities" of the FARC).  Instead, Plaintiffs seek to paint "all aspects of the Venezuela Government and its infrastructure" with the alleged misdeeds of Nicolás Maduro and the "Cartel of the Suns."  ECF 111/37 at 9 (emphasis omitted; citing Maduro Indictment (ECF No. 109-5/38-5) ¶ 15); *see also, e.g., id.* at 17 ("the PdVSA subsidiaries are members of the Cartel of the Suns . . .").  Plaintiffs assert that "PDVSA and its subsidiaries" are "one of the primary means through which FARC proceeds are laundered."  *Id*. at 17 (quoting Gaddis Aff. (ECF No. 113-4/37-4) ¶ 29).  But on closer inspection, these conclusory statements allege only that criminals — the purported Cartel of the Suns — abused state owned companies for their own benefit.  *See, e.g., id.* at 12 ("'The Cartel of the Suns and its leaders use government ministries, state owned enterprises and their corporate subsidiaries to move, conceal and launder their criminal proceeds to sustain the Cartel's operations.'" (quoting Farah Aff. (ECF No. 109-5/38-5) ¶ 58)).  How or why this alleged criminal activity should be imputed to its victims (PDVSA, its subsidiaries, and ultimately the Venezuelan people) such that they should be liable for Plaintiffs' default judgments against the FARC is entirely unclear.

Indeed, as discussed above, the only PDVSA Subsidiary specifically mentioned in Plaintiffs' submission is Petrowarao, but only in the context of an unspecified indictment alleging money laundering.  *See* ECF Nos. 111/37 at 12.  Setting aside that indictments are not admissible evidence of wrongdoing, none of the indictments proffered by Plaintiffs mention any PDVSA Subsidiary.  ECF Nos. 109-5, 11, 14, 15, 25/38-5, 11, 14, 15, 25; *In re Adelphia Communs.*, 2014 WL 6982140, at *10 (holding indictments are inadmissible hearsay).  Plaintiffs' submission as to the other Subsidiaries fairs no better.  At bottom, Plaintiffs' TRIA submission boils down to an

19

impermissible ownership theory: (1) the FARC is allied with Maduro and the Cartel of the Suns, (2) the illegitimate Maduro regime owns and controls PDVSA (it does not); and (3) the Subsidiaries are owned by PDVSA, therefore (4) the PDVSA Subsidiaries must be agencies or instrumentalities of the FARC.  *Id.* at 9.  But such an endless veil piercing theory plainly fails as a matter of law.  *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012) ("A corporate parent's ownership interest in a subsidiary, standing alone, is insufficient to demonstrate the existence of an agency relationship.").  More fundamentally, this theory, if accepted, would so "broadly construe[] *Kirschenbaum*'s reading of TRIA" as to permit recovery against third parties "that had only incidental and perhaps unintentional involvement with a terrorist party."  *Assa Corp.*, 934 F.3d at 199.  Moreover, Plaintiffs' theory, if accepted, would amount to a judicial declaration that the Government of Venezuela, an ally of the United States, is a state sponsor of terrorism — a declaration squarely within the province of the Executive Branch, and one it has declined to make.  *See Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("[T]he very nature of executive decisions as to foreign policy is political, not judicial.").

In any event, Plaintiffs submission was replete with irrelevant, inadmissible, and insufficient evidence concerning the PDVSA Subsidiaries.  As a critical threshold matter, an "entity's agency or instrumentality status" under TRIA is determined at the time the enforcement action was commenced against the particular entity in question.  *Harrison v. Republic of Sudan*, No. 13-cv-3127, 2017 WL 946422, at *4 (S.D.N.Y. Feb. 10, 2017).  Here, Plaintiffs commenced their actions against the PDVSA Subsidiaries on December 10, 2020, when they sought writs in respect of the PDVSA Subsidiaries' property.  *See* ECF Nos. 111/37.  Yet nearly all of Plaintiffs' allegations relative to the PDVSA Subsidiaries' alleged relationship to the FARC concern purported conduct under the former Chavez and illegitimate Maduro regimes that long predates

December 10, 2020. *See, e.g.*, ECF Nos. 111/37 at 10, 12 (describing a purported 2008 agreement by then-president Chavez to "use funds from [PDVSA] to support the FARC's drug-trafficking"). In fact, even where Plaintiffs' witnesses purport to describe present-day facts, they rely on information that likewise long predates the enforcement actions here. *See, e.g.*, *id.* at 12 (claiming that "PDVSA and its subsidiaries *are* the primary vehicle used to launder FARC and Cartel profits" (emphasis added), but citing as an example the same 2008 alleged Chavez agreement described above); ECF Nos. Farah Aff. at 12 n.8 (purporting to describe the "current Venezuela Government," but citing a 2019 article, in turn citing a New York Times article from April 2013). These temporal issues are particularly important here since, by December 2020, the Ad Hoc Board appointed by Interim President Guaidó had controlled PDVSA's affairs for nearly two years.

Even without these fatal temporal defects, Plaintiffs have failed to show by a preponderance of the evidence that they are entitled to execute on the blocked assets of the PDVSA Subsidiaries. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) (holding that, where statute is silent, "preponderance-of-the-evidence standard" is generally "applicable in civil actions between private litigants"). In fact, Plaintiffs have not adduced any evidence admissible under the Federal Rules of Evidence showing that any of the PDVSA Subsidiaries are "agencies or instrumentalities" of the FARC.

Plaintiffs' purported evidence principally comprises (i) a March 2020 indictment of former president Maduro (*see* ECF No. 111 at 7-8 (citing ECF Nos. 109-5/37-5)); (ii) an affidavit by Douglas Farah (ECF No. 111-3); and (iii) an affidavit by David Gaddis (ECF Nos. 111-4/37-4). All three documents are inadmissible under the Federal Rules of Evidence and otherwise insufficient to show that any PDVSA Subsidiary is an agency or instrumentality of the FARC.

First, the indictment and both affidavits are inadmissible hearsay and hearsay-within-

hearsay.  *See* Fed. R. Evid. 801 & 802; *In re Adelphia Communs.*, 2014 WL 6982140, at \*10 (holding indictments are inadmissible hearsay).  Indeed, the Farah and Gaddis Affidavits consist largely of prolonged quotations from various news articles, press releases, think tank reports, congressional documents, and the Maduro indictment.  *See, e.g.*, Farah Aff. ¶ 21 (quoting seven full pages from OFAC press releases); *id.* ¶ 37 (extensively quotations from the Maduro indictment and others); Gaddis Aff. ¶¶ 13, 20 (quoting from Maduro indictment); *id.* ¶ 22 (quoting a Wall Street Journal article).  None of this evidence is admissible under any hearsay exception.  *See* Fed. R. Evid. 802 & 803; *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.").

Second, both Farah and Gaddis — who are proffered as "expert witnesses" (ECF Nos. 111/37 at 4 n.3) — opine that the PDVSA Subsidiaries (and other subsidiaries not present before the Court) are "agencies or instrumentalities" of the FARC.  Farah Aff. ¶ 63; Gaddis Aff. ¶ 35. These "opinions" are inadmissible legal conclusions.  *See Cameron v. City of N.Y.*, 598 F.3d 50, 62 (2d Cir. 2010) ("[W]itnesses may not 'present testimony in the form of legal conclusions.'").

Third, neither Farah nor Gaddis reliably applied the alleged facts to any expert methodology.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").  The unreliability of the affidavits is demonstrated by, among other things, the fact that both Farah and Gaddis refer to Maduro as the current president of Venezuela without even acknowledging Guaidó and the Interim Government, which the United States recognizes as the only legitimate government of Venezuela.  *See, e.g.*, Farah Aff. ¶¶ 56-57; Gaddis Aff. ¶¶ 12, 19.  Similarly, as noted above, both Farah and Gaddis

draw conclusions about PDVSA's present-day status based on information sometimes more than a decade old. *See, e.g.*, ECF Nos. 111/37 at 12; ECF Nos. 111-4/37-4 at 12 n.8. These errors only highlight the unreliability of this testimony. *See* Fed. R. Evid. 702; *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 355 (S.D.N.Y. 2005) ("[A]n expert opinion inadequately informed about the factual grounding of the subject it is called to address, bears none of the hallmarks of reliability necessary for the opinion to be admissible under *Daubert*.").

Because Plaintiffs have adduced no admissible or sufficient evidence in support of their claim that each of the PDVSA Subsidiaries is an agency or instrumentality of the FARC, the December 15 Orders and the writs should be vacated and the turnover motions denied.

### C. Plaintiffs Have Not Established That The PDVSA Subsidiaries Or The FARC Own The Blocked Assets At Issue

Plaintiffs' attempts to attach the PDVSA Subsidiaries purported assets also fail because Plaintiffs have not proven ownership of the assets. TRIA provides that a plaintiff can execute only against "the blocked assets *of* that terrorist party (*including* the blocked assets of any agency or instrumentality of that terrorist party)." TRIA § 201 (emphasis added). The plain meaning of the language emphasized is that "a plaintiff can execute only against assets that are 'assets of,' i.e., property belonging to, the terrorist party." Br. of the U.S. at 307, *In re 650 Fifth Ave. & Related Props.*, No. 17-3258(L) (2d Cir. Aug 31, 2018), ECF No. 105 (citing *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014)). Further, the use of the word "including" (instead of "and" or "or") only underscores that "the terrorist party" must have at least an ultimate-beneficial ownership interest in "the blocked assets" even if they are also "blocked assets of any agency or instrumentality of that terrorist party." TRIA § 201(a). But Plaintiffs have never alleged that the assets they seek to execute are property "of" the FARC, or that the FARC has any ownership interest in the blocked assets at issue, which puts TRIA out of reach for this action. *Cf.*

*Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 199 (2d Cir. 2019) (noting "concerns" that, "if broadly construed, *Kirschenbaum*'s reading of TRIA could invite lawsuits against a third-party institution . . . that had only incidental and perhaps unintentional involvement with a terrorist party").

And even if TRIA permitted Plaintiffs to treat the PDVSA Subsidiaries as if they were FARC assets (it does not), TRIA would still not permit attachment of the blocked assets because Plaintiffs never established that the PDVSA Subsidiaries in fact own the blocked assets. *See, e.g.*, *Levin v. JPMorgan Chase Bank, N.A.*, 751 F. App'x 143, 147 (2d Cir. 2018) (application of TRIA "turns on the issue of ownership of th[e] funds"). This deficiency presents yet another ground to vacate the December 15 Orders, quash the writs, and deny the motion for turnover.

Moreover, even if the Blocked Assets were owned by the PDVSA Subsidiaries, the assets still are not "available for execution" under TRIA because they are not "blocked pursuant to the particular regulation or administrative action directed at the particular terrorist-party judgment debtor" — here, the FARC. *Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp.2d 553, 567 (S.D.N.Y. 2012) ("TRIA does not permit a party with a judgment against Iran to execute against funds blocked pursuant to the [Cuban Assets Control Regulations], which are, of course, targeted at Cuba."), *rev'd on other grounds*, 770 F.3d 207 (2d Cir. 2014); *accord Levin v. Bank of N.Y. Mellon*, 09 CV 5900, 2013 WL 5312502, at *8 (S.D.N.Y. Sept. 19, 2013). In January 2019, OFAC blocked PDVSA's assets "for operating in the oil sector of the Venezuelan economy." OFAC Press Release (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594; *see also* Venezuela Sanctions Regs. (31 C.F.R. part 591). The FARC, meanwhile, is designated as a significant foreign narcotics trafficker, a Foreign Terrorist Organization and a Specially Designated Global Terrorist. *See* OFAC List of Specially Designated Nationals and Blocked Persons, https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-

24

nationals-list-data-formats-data-schemas; *see also* Foreign Terrorist Organization Sanctions Regulations (31 C.F.R. part 597), Global Terrorism Sanctions Regulations (31 C.F.R. part 594), and Foreign Narcotics Kingpin Sanctions Regulations (31 C.F.R. part 598).  This lack of overlap between the relevant OFAC programs precludes execution on the Subsidiaries' assets under TRIA (*see Hausler*, 845 F. Supp. 2d at 567) and counsels against effectuating "the judicial seizure of the property of a friendly state" — here the Interim Government of Venezuela.  *See Philippines v. Pimentel*, 553 U.S. 851, 866 (2008).  These comity concerns provide another ground upon which this Court may vacate the turnover judgment, quash the writs, and deny the turnover motions.  At a minimum, the Court should invite the views of the United States.  *See* 28 U.S.C. § 517.

## CONCLUSION

For the foregoing reasons, the PDVSA Subsidiaries respectfully request that the Court vacate the December 15 Orders, quash the writs of execution issued thereunder, deny Plaintiffs' turnover motions, and dismiss this enforcement action, with prejudice.

Dated:  August 13, 2021

Respectfully submitted,

**WHITE & CASE**

By: /s/ *Claire A. DeLelle*
Claire A. DeLelle
Nicole Erb
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
nerb@whitecase.com

Susan L. Grace
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
susan.grace@whitecase.com