UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
KEITH STANSELL, et al.,                                     :
                                       Claimants,           :
                                                            :     16 Misc. 405 (LGS) (SN)
            -against-                                       :
                                                            :
REVOLUTIONARY ARMED FORCES OF                               :
COLOMBIA (FARC), et al.,                                    :
                                       Defendants.          :
------------------------------------------------------------X
------------------------------------------------------------X
                                                            :
OLIVIA PESCATORE, et al.                                    :
                                       Claimants,           :
                                                            :     18 Misc. 545 (LGS) (SN)
            -against-                                       :
                                                            :     **OPINION AND ORDER**
JUVENAL OVIDIO RICARDO PALMERA                              :
PINEDA, et al.,                                             :
                                       Defendants.          :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Six families seek redress for the harms caused by Fuerzas Armadas Revolucionarias de Colombia ("FARC"), the Ejército de Liberación Nacional (the "ELN"), and the El Norte del Valle Cartel (the "NDVC"). Each family has obtained judgments against these groups under the Antiterrorism Act ("ATA"), and each now seeks to satisfy those judgments, bringing the families into conflict. Four families whose claims arise from FARC's shooting down of an airplane over Colombia (collectively, the Stansells) have combined collection efforts with the family of a kidnapping victim of FARC (the Pescatores). The Stansells and Pescatores registered their judgments in this District and, through the Terrorism Risk Insurance Act ("TRIA"), sought the turnover of assets of purported FARC agents and instrumentalities. Antonio Caballero, whose

father was killed by FARC and the ELN, intervened, seeking to satisfy his judgment with the same assets.

In response, the third parties holding those accounts sought interpleader relief, naming the Stansells, the Pescatores and Caballero as Defendants. The judgment holders, in turn, answered and crossclaimed against each other. In brief, each judgment holder seeks a declaratory judgment finding that their ATA judgment is valid while their opponents' is not. Samark Jose Lopez Bello and the Yakima Trading Corporation (together, "Lopez Bello"), third party asset holders affected by the turnovers, intervened to challenge the enforcement of the judgments. The case was referred to Magistrate Judge Sarah Netburn for discovery and for a recommendation on dispositive motions.

In a Report and Recommendation (the "Report") dated March 29, 2022, Judge Netburn recommended a declaratory judgment that, in short, credits the parties' arguments about the enforceability of their own judgments and rejects their arguments about the unenforceability of their opponents' judgments. Specifically, the Report recommends finding that Caballero's prior judgment is not void as a matter of law, that Caballero is entitled to collect both the economic and non-economic compensatory damages awarded to him, and that the Stansells and Pescatores may collect their entire ATA judgments as compensatory damages under TRIA. Lopez Bello timely filed an objection to the Report's recommendation that the Stansells' and Pescatores' ATA judgments are entirely compensatory in nature and fully collectable in the TRIA. The Stansells and Pescatores filed a joint response opposing the objections. For the following reasons, the Report's recommendations are adopted in full.

I.  BACKGROUND

A.  The Report and Recommendation

Familiarity with the relevant factual background and procedural history as set out in the Report is assumed.

As a preliminary matter, the Report found that the Court has subject matter jurisdiction over this action and then construed the parties' cross-motions, variously styled, as motions for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). On the merits, the Report recommends a declaratory judgment that Caballero's prior judgment is not void as a matter of law for lack of jurisdiction and that Caballero may collect both the economic and non-economic damages he was awarded. No party has objected to these recommendations.

The Report also recommends finding that the Stansells' and Pescatores' judgments, which include treble damages awarded under the ATA's civil remedy provision, are fully recoverable under TRIA. TRIA limits recovery to compensatory damages, and the parties dispute whether the treble damages awarded to the Stansells and Pescatores are compensatory.

The Report explains that treble damages can be either compensatory or punitive, depending on the relevant statute. The Report concludes the ATA's treble damages provision is compensatory, because it mirrors similar provisions in the Clayton Act and the Racketeer Influenced and Corrupt Organizations Act ("RICO") found to be compensatory and because the statutory structure of civil liability for terrorism suggests a policy of incentivizing victims to bring suit. The Report notes that other cases have characterized the ATA's treble damages as punitive, but distinguished them or otherwise rejected their reasoning. Finally, the Report reasons that the course of this litigation and prior opinions in the Stansell and Pescatore cases

3

support a finding that the treble damages awarded to the Stansell and Pescatore families are compensatory.

### B. Objections to the Report

On May 12, 2022, Lopez Bello filed timely objections to the Report, arguing its analysis of the compensatory nature of the Stansell and Pescatore judgments errs as a matter of law. Lopez Bello rejects comparisons the Report makes to the Clayton Act or RICO in finding the treble damages to be compensatory, noting the differences between the deterrent purpose of the ATA and those laws, and the comparatively greater need to incentivize plaintiffs to bring complicated antitrust or RICO cases. Lopez Bello also argues that the Report errs in its discussion of parallel anti-terrorism statutes, because those statutes did not amend or otherwise modify the ATA, making them inapposite. Finally, Lopez Bello argues that the procedural history of this case is not a relevant guidepost in determining whether the damages are compensatory, and in any event, the history does not support such a determination. On May 26, 2022, the Stansells and Pescatores filed a response opposing the objections, largely mirroring the legal arguments of the Report. On November 28, 2022, the Stansells and Pescatores filed a notice of supplemental authority, alerting the Court to four decisions released subsequent to the issuance of the Report. That letter attached a putative opinion, written from the perspective of the Court, adopting the Report. The same day, Lopez Bello filed a letter motion to strike the notice of supplemental authority and attachment, arguing that they are procedurally improper supplemental briefing.

## II. STANDARD OF REVIEW

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court

"may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013) (summary order). A district court need only satisfy itself that "no clear error [is apparent] on the face of the record." *See, e.g.*, *Candelaria v. Saul*, No. 18 Civ. 11261, 2020 WL 996441, at *1 (S.D.N.Y. Mar. 2, 2020).

A district court must conduct a de novo review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). "When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error." *Espada v. Lee*, No. 13 Civ. 8408, 2016 WL 6810858, at *2 (S.D.N.Y. Nov. 16, 2016) (internal quotation marks omitted).

**III.    DISCUSSION**

Lopez Bello objects to the Report's recommended damages for the Stansells and Pescatores, and the Report's characterization of those treble damages as entirely compensatory and therefore recoverable under the TRIA. This question is reviewed de novo.

TRIA allows victims of terrorism to target the assets of terrorists (or their agents or instrumentalities) "in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." 28 U.S.C. § 1610 note; *see also Bank Markazi v. Peterson*, 578 U.S. 212, 220 n.7 (2016) ("TRIA . . . permit[s] execution only to the extent of any compensatory damages." (internal quotation marks omitted)). The Stansell and Pescatore judgments arise out of, and award treble damages pursuant to, the ATA. The ATA

5

provides that an American victim of terrorist acts "shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a).

Treble damages can be compensatory or punitive. *See Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 130 (2003) ("[I]t is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives."). Supreme Court cases "have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards." *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 405 (2003) (collecting cases). This inquiry "defies general formulation, being dependent on the workings of a particular statute and the course of particular litigation." *Chandler*, 538 U.S. at 130.

Treble damages under the ATA are compensatory damages because they are remedial in nature, and function, in essence, as a form of liquidated damages. The relevant factors under *Chandler,* the workings of the statute and the course of this particular litigation, both point toward this conclusion.

As to the workings of the statute, the text of the statute mirrors other treble damages provisions that the Supreme Court has found are compensatory. The spectrum described in *Chandler* -- of compensatory damages on one side and punitive damages on the other -- is one ranging from awards primarily aimed at the victim (i.e., to compensate them) to awards primarily aimed at the wrongdoer (i.e., to punish them). In this view, the ATA's treble damages provisions are squarely aimed at the victim and are therefore compensatory. First, recovery is limited to those who were injured and measured by a multiple of the injury suffered. Second, although the ATA has a deterrent aspect, the trebling is aimed at victims, incentivizing them to bring suit as "private attorneys general." Finally, the harm compensated in an ATA case is frequently pain

6

and suffering, which is difficult to quantify. In this sense, treble damages function as a form of liquidated damages, compensating the victim for a loss that is difficult to value as well as the costs and uncertainty of litigation.

As to the course of litigation, the record is replete with references to these judgments being for compensatory damages, and Lopez Bello's arguments to the contrary are unpersuasive.

### A. The ATA

When analyzing the "workings of a particular statute," *Chandler*, 538 U.S. at 130, the first step is to look at the text. *See Zepeda-Lopez v. Garland*, 38 F.4th 315, 320 (2d Cir. 2022) ("When interpreting a statutory provision, we begin with the language of the statute." (internal quotation marks omitted)). The ATA's treble damages provision mirrors those of the Clayton Act and RICO. *Compare* 18 U.S.C. § 2333(a) ("Any national of the United States injured in his or her person, property, or business by . . . an act of international terrorism . . . shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees."), *with* 15 U.S.C. § 15(a) (Clayton Act) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee."), *and* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a [RICO violation] . . . shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."). The Supreme Court has found both the Clayton Act and RICO treble damages provisions to be compensatory in nature. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977) ("[15 U.S.C. § 15(a)] is in essence a remedial provision."); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987) ("RICO . . . [is] designed to remedy economic injury by providing for the recovery of treble

7

damages, costs, and attorney's fees."). However, the plain text of all three statutes is silent on the question of how to characterize treble damages, and *Brunswick* and *Malley-Duff* relied on the statutory structure and legislative history of their respective statutes to support their conclusions. Accordingly, the Court turns to the overall structure of the ATA.

In distinguishing between compensatory and punitive damages, the inquiry is whether the damages are aimed primarily at the victim (compensatory) or primarily at the wrongdoer (punitive). *See Cooper Indus., Inc. v. Leatherman Tool Grp.*, 532 U.S. 424, 432 (2001) ("[Compensatory damages] are intended to redress the concrete loss that the plaintiff has suffered . . . . [Punitive damages], which have been described as quasi-criminal, operate as private fines intended to punish the defendant and to deter future wrongdoing." (internal quotation marks and citations omitted)). *Compare* Restatement (Second) of Torts, § 903 ("'Compensatory damages' are the damages awarded *to a person* as compensation, indemnity or restitution for harm sustained by him." (emphasis added)), *with id.* § 908 ("Punitive damages are damages, other than compensatory or nominal damages, awarded *against a person* to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." (emphasis added)).

Various features of the ATA indicate its damages provision is aimed at the victims of terrorism. First and foremost, the ATA limits recovery to those injured by an act of terrorism and pegs recovery to the damages sustained by the victims and proven at trial, multiplied by three. Both of these features indicate a compensatory purpose. In this sense, the ATA mirrors the Clayton Act, which also limits a private cause of action to those injured by anti-competitive conduct and measures the awards by a multiple of the injury actually proved, key features relied upon by the Supreme Court in *Brunswick*. *See* 429 U.S. at 485-86 ("[T]he treble-damages

8

provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy."); *see also Malley-Duff*, 483 U.S. at 151 ("[B]oth [RICO and the Clayton Act] aim to compensate the same type of injury[.]").

That the ATA attempts to incentivize lawsuits to "deter and punish" terrorism, as Lopez Bello describes, does not undermine this conclusion. A punitive intent, evidenced by other provisions of the ATA such as its criminal provisions, can coexist with an intent to compensate victims of terrorist attacks, because statutes can simultaneously have punitive, deterrent and compensatory purposes. For example, the Supreme Court stated, regarding the Clayton Act:

> "[A]ntitrust treble damages were designed in part to punish past violations of the antitrust laws. But treble damages were also designed to deter future antitrust violations. Moreover, the antitrust private action was created primarily as a remedy for the victims of antitrust violations. Treble damages make the remedy meaningful by counter-balancing the difficulty of maintaining a private suit under the antitrust laws."

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 (1982) (citations and internal quotation marks omitted). The same logic applies to the ATA, which, taken as a whole, reflects both a desire to punish terrorists via criminal and civil penalties and to compensate victims of terrorism. The treble damages provision accomplishes this by trying to motivate victims to bring suit, in the model of private attorneys general. In other words, treble damages in the ATA and the Clayton Act are aimed at victims, incentivizing them to seek compensation for their injuries -- and in the process, deter future terrorist acts. *Brunswick* reflects a similar logic, analyzing the legislative history of the Clayton Act to conclude that treble damages were "conceived of primarily as a remedy"; despite a motivation "in part for punitive purposes," trebling "ma[d]e the remedy meaningful by counterbalancing the difficulty of maintaining a private suit." 429 U.S. at 486 n.10 (internal quotation marks omitted).

Lopez Bello argues that "nothing in the legislative history of the ATA . . . indicate[s] that the trebling provisions were included to 'incentivize' claimants to seek recovery for criminal acts." This argument fails because it inaccurately describes the legislative history. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013) ("[T]he ATA's legislative history reflects that Congress conceived of the ATA, at least in part, as a mechanism for protecting the public's interests through private enforcement."); *Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Courts and Administrative Practice of the S. Judiciary Comm.*, 101st Cong. 34 (1990) (statement of Steven R. Valentine, Deputy Assistant Att'y Gen., Civil Division) ("[The ATA] provides a federal forum for any national of the United States to seek compensation in the form of treble damages for injuries resulting from acts of international terrorism.").

Instead, treble damages under the ATA operate as a form of liquidated damages, one that takes on particular importance to incentivize these suits. In a concurring opinion in *Estate of Parsons v. Palestinian Authority*, Judge Brown reasoned that treble damages under the ATA should be thought of as a form of liquidated damages rather than punitive damages. 651 F.3d 118, 148 (D.C. Cir. 2011) (Brown, J., concurring in part and dissenting in part) ("Treble damages are statutory or liquidated damages—not punitive damages."). Liquidated damages are typically in a contractually prescribed amount to compensate a party for a harm that is difficult to quantify. *See* Restatement (Second) of Contracts, § 356 (defining liquidated damages as appropriate "in the light of the anticipated or actual loss . . . and the difficulties of proof of loss"). Certain federal statutes incorporate liquidated damages provisions. *See* 29 U.S.C. § 216(b) (Fair Labor Standards Act ("FLSA")) ("[Employers] shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."); 29 U.S.C. § 626(b) (Age

Discrimination in Employment Act) (setting "unpaid minimum wages or unpaid overtime compensation" as "liquidated damages").  FLSA's liquidated damage provision "is not penal in nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate . . . ."  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *accord United States v. Sabhnani*, 599 F.3d 215, 260 (2d Cir. 2010) ("[L]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." (internal quotation marks omitted)).

This reasoning applies to the ATA.  ATA damage awards can compensate the estates of victims and their family members for non-economic harms such as pain and suffering, loss of companionship and mental anguish.  *See, e.g.*, *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62 (S.D.N.Y. 2006) (awarding damages for "loss of consortium, loss of companionship, society and guidance, and damages of mental anguish"); *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216 (D.D.C. 2008) (awarding damages for loss of consortium and pain and suffering); *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 239 (D.R.I. 2004) (same). Putting a dollar amount on such harms is unavoidably inexact and difficult to prove, making it reasonable to treat the treble damages provisions of the ATA as liquidated damages to ensure adequate compensation for these difficult-to-quantify losses. Further, civil liability for terrorism frequently produces large, unsatisfied judgments against absent defendants, forcing plaintiffs to pursue assets for years following the entry of judgment -- as is the case here.  The difficulty and delay in recovering assets further supports treating the treble damages as a form of liquidated damages.  They compensate plaintiffs for the risks inherent in bringing suit and, even if successful, satisfying a judgment.

The decisions Lopez Bello cites do not disturb the conclusion that the ATA's treble damages are compensatory. *Estates of Ungar ex rel. Strachman v. Palestinian Authority* rejected a request for the imposition of prejudgment interest on an ATA judgment, stating that "the treble damages provision of Section 2333 is overwhelmingly punitive, and prejudgment interest does not apply to a punitive damages award." 304 F. Supp. 2d at 239. *Ungar* is not binding on this court, and to the extent that its analysis can be extended from pre-judgment interest to damages awardable under TRIA, this Court respectfully disagrees for the reasons stated above. *Ungar* based its holding on the legislative history of the ATA's civil remedies, specifically legislators' statements regarding the deterrent effect of the bill, but did not consider the legislative history pointing to a concurrent compensatory purpose discussed *supra*.

*Boim v. Holy Land Foundation for Relief & Development,* which Lopez Bello cites, also does not discuss the arguments and precedent on which the instant decision relies. *See* 549 F.3d 685, 692 (7th Cir. 2008) (en banc). *Boim* considered general principles of tort law to determine what scienter is required for civil liability under the ATA. The court concluded that an ATA violation is like intentional tort, given the provision for treble damages. *See* 549 F.3d at 692 ("[M]ore is required in the case of intentional torts, and we can assume that since [the ATA] provides for an automatic trebling of damages it would require proof of intentional misconduct . . . ."). The court basically assumed that treble damages are always punitive as a stepping stone to determine the appropriate corresponding state of mind. *See id.* The court's objective was not to undertake a rigorous inquiry into the nature or purpose of ATA treble damages.

In sum, for purposes of determining recoverable damages under TRIA, the ATA's treble damages are compensatory under the first factor mentioned in *Chandler*.

### B. This Litigation

*Chandler's* second factor is to determine where a damage award lies on the spectrum of "payback and punishment" in the "course of particular litigation." 538 U.S. at 130. *Chandler* did not explain this factor or apply it to facts of the case, *see id.*, and its interaction with the first factor is unclear. As Judge Netburn noted, *see* Report at 36 n.10, there is some tension between the two *Chandler* factors, and looking to the course of the particular litigation may be more helpful in cases like *Chandler* where the statutory trebling provision is less clearly compensatory than it is here. In any event, the "course of the litigation" strongly supports finding that the damages here are compensatory.

The underlying judgments in both cases refer to the full amount of damages as compensatory. *See* Default Judgment in a Civil Case, *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, No. 09 Civ. 2308 (M.D. Fla. June 15, 2010) (entering "judgment … for compensatory damages" for Plaintiffs); Order, *Pescatore v. Juvenal Ovidio Ricardo Palmera Pineda*, No. 08 Civ. 2245 (D.D.C. Nov. 1, 2018) (entering "solatium damages" for Plaintiffs); *see also Solatium*, Black's Law Dictionary (11th ed. 2019) (defining solatium as "compensation"). Multiple courts have referred to, held that or affirmed findings that the Stansell judgments are compensatory. *See Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 913 (11th Cir. 2013) ("In 2010, [the Stansells] collectively obtained a default judgment against FARC for $318 million in compensatory damages."); *Stansell v. Revolutionary Armed Forces of Colom.*, No. 19 Civ. 20896, 2020 WL 4692748, at *2 (S.D. Fla. July 16, 2020) ("[T]his Court concludes that the [Stansell] judgment is for compensatory damages."), *appeal dismissed as moot*, 45 F.4th 1340, 1360-61 (11th Cir. 2022); *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, No. 09 Civ. 2308, 2020 WL 13469704, at *7 (M.D. Fla. Oct. 5, 2020)

("[T]he Court intended for the judgment to be entered in an amount of compensatory damages."), *aff'd sub nom. Stansell v. Lopez*, 40 F.4th 1308, 1311 (11th Cir. 2022) ("[T]he district court found that the intent was for the entire $318 million to be deemed compensatory, and we see no abuse of discretion (or clear error) in that regard."). The course of this particular litigation confirms that the Stansell and Pescatore judgments are compensatory for purposes of TRIA.

Lopez Bello's arguments to the contrary are not persuasive. He suggests that the relevant litigation ended with the entry of default judgments in 2010, and excludes the litigation collection efforts thereafter. But the nature of civil remedies for acts of terrorism, which often produce large default judgments, makes this argument particularly unpersuasive. He argues that the Stansells and Pescatores "incurred very little 'cost' in litigating the underlying matters to final default judgment." This misunderstands that the damages compensate the families for their underlying injuries, as well as the costs and risks of bringing suit. Lopez Bello notes that other cases used to determine the amount of the Stansells' award first calculated a *per diem* amount and additional lump sum, and then considered the issue of punitive damages. He argues that because the Stansells' award is similarly based on a *per diem* amount and lump sum, the additional damages under the statutory trebling must be punitive. This argument ignores that the judge in the Stansells' case never called or characterized the trebled damages as punitive. Finally, Lopez Bello argues that the many garnishment orders issued as part of efforts to satisfy the Stansell judgments, which reference "compensatory damages," were drafted by the Stansells' counsel and, in at least one case, were vacated on other grounds. This objection is beside the point. These orders, regardless of their drafting history, are relevant as they indicate a long-running understanding of the damages in this case being wholly compensatory.

\* \* \*

Both factors under *Chandler* support a finding that damages awarded under the ATA, in general and in this case, are compensatory. The Stansell and Pescatore judgments are fully recoverable under TRIA.

## IV. CONCLUSION

Lopez Bello's objections are **OVERRULED**. The remainder of the Report, to which there is no objection, is well-reasoned, thorough and contains no error, clear or otherwise. The Report's recommendation is **ADOPTED IN FULL**. By **January 4, 2023**, the parties shall submit a joint proposed form of Judgment consistent with this Opinion and Order.

The Stansells' and Pescatores' notice of supplemental authority and proposed opinion were not considered, and Lopez Bello's letter motion to strike them is accordingly **DENIED** as moot.

Dated: December 21, 2022
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**