UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KEITH STANSELL, et al.,

                        Plaintiffs,              16-MC-00405 (LGS)(SN)

              -against-                                  OPINION & ORDER

REVOLUTIONARY ARMED FORCES OF
COLOMBIA (FARC), et al.,

                        Defendants.
-----------------------------------------------------------------X
-----------------------------------------------------------------X
OLIVIA PESCATORE, et al.,

                        Plaintiffs,              18-MC-00545 (LGS)(SN)

              -against-

JUVENAL OVIDIO RICARDO PALMERA
PIÑEDA, et al.,

                        Defendants.
-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

       Citibank, N.A. ("Citibank"), Sumitomo Mitsui Banking Corporation ("SMBC"), and Equiniti Trust Company ("Equiniti") (collectively, the "Garnishees") hold funds for various Venezuelan entities, including Banco Bicentenario Banco Universal C.A. ("Banco Bicentenario"), Banco de Venezuela S.A., Banco Universal ("Banco de Venezuela"), Petrocedeño S.A. ("Petrocedeño"), Petrowarao S.A. ("Petrowarao"), Petro San Felix S.A. ("Petro San Felix"), Aceites y Solventes Venezolanos Vassa S.A. ("Vassa"), Venfleet Asphalt Ltd. ("Venfleet"), and Venezuelan Heavy Industries C.A. ("VHI") (collectively, the "Third Parties"). Those funds are the target of turnover proceedings by the Plaintiffs in Stansell, et al. v. Revolutionary Armed Forces of Columbia, et al., No. 16-mc-00405 ("Stansell"), and Pescatore,

et al. v. Piñeda, et al., No. 18-mc-00545 ("Pescatore"), and Intervenor Antonio Caballero, who aim to collect on judgments issued under the Anti-Terrorism Act.

As custodians of the contested accounts, the Garnishees filed third-party complaints seeking interpleader relief. As of yet, they have been unable to serve those complaints on the Third Parties through counsel or the Hague Convention protocols. They seek leave to serve the Third Parties by alternative means under Rule 4 of the Federal Rules of Civil Procedure.[1] ECF Nos. 477–88, 522.[2] The Court grants in part and denies in part the Garnishees' motion and directs them to effectuate service in accordance with this Opinion and Order.

## BACKGROUND

The Court assumes familiarity with the procedural and factual background of these cases. It summarizes only the background relevant to the Garnishees' motion for alternative service.

**I.    Political Conflict in Venezuela**

In 2018, Juan Guaidó ran for office against sitting Venezuelan President Nicolás Maduro. See ECF No. 479 at ¶ 5. Maduro declared victory, but Guaidó challenged the results in court—a challenge the Venezuelan Supreme Court ultimately dismissed. See id. Guaidó refused to accept the decision from the Maduro-controlled judiciary and declared himself the interim President of Venezuela. See id. at ¶¶ 4–7. The United States then recognized Guaidó as Venezuela's head of state. See id. at ¶ 9. Maduro's government still retains control over Venezuelan territory, the military, the bureaucracy, and government-affiliated enterprises. See id. at ¶ 8.

**II.   The Garnishees Efforts to Serve the Third Parties**

The Garnishees filed third-party complaints seeking interpleader relief in April 2021. See ECF Nos. 208, 225, 227, 229, 234, 236, 238. The Stansell and Pescatore Plaintiffs, Caballero,

---

[1] Subsequent references to "Rules" are to the Federal Rules of Civil Procedure.
[2] All ECF numbers refer to the Stansell docket, No. 16-mc-00405.

and Clearstream accepted or waived service. See ECF No. 478 at 7, 11–12, 14. Serving the Third Parties was more difficult.

The Garnishees first asked counsel for each Third Party to accept or waive service. That proved complicated because two firms claim to represent many of the same parties in this case.[3] One firm, León Cosgrove Jiménez, LLP ("Jiménez"), was hired by Maduro's government and has entered its appearance on behalf of all the Third Parties.[4] See ECF No. 362 at 1. Jiménez declined to accept or waive service. See ECF Nos. 480 at ¶¶ 9, 12; 481 at ¶¶ 7, 11–12; 485 at ¶ 7; 487 at ¶¶ 3–4. A second firm, White & Case LLP ("White & Case"), was hired by Guaidó's government and has entered its appearance on behalf of Petrocedeño, Petrowarao, Petro San Felix, Vassa, Venfleet, and VHI. See ECF Nos. 295, 296, 297, 378, 426. White & Case executed service waivers as to all but Petrocedeño. See ECF Nos. 290, 291, 292, 305, 306. With White & Case's authority to represent those entities in dispute, however, the Court assumes for the purposes of this motion that those waivers are ineffective.

The Garnishees next attempted service in Venezuela and Bermuda, where the Third Parties have addresses. Two international conventions provide frameworks for serving the Third Parties there: the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 1635 (the "Hague Convention"), and the Inter-American Convention on Letters Rogatory, *opened for signature* Jan. 30, 1975, O.A.S.T.S. No. 43, 1438 U.N.T.S. 288 (the "IACLR").

---

[3] A third firm, Edmonds Marshall McMahon ("EMM") of London, represents Banco de Venezuela's parent company, the Ad Hoc Board for Banco de Desarrollo Económico y Social de Venezuela ("BANDES"), but has not appeared in this case. EMM has not accepted or waived service on behalf of any party. See ECF Nos. 480 at ¶ 11, 487 at ¶ 5. The Court expresses no opinion on the proper counsel for the parties at this time.

[4] Marcos D. Jiménez is an attorney of record for several parties and a member of León Cosgrove Jiménez, LLP, but when he first entered his appearance he was a member of another firm. See ECF No. 505. For the sake of consistency, the Court attributes to "Jiménez" all advocacy performed by him or his firms.

Under both conventions, countries must designate "Central Authorit[ies]" to process requests for service on individuals or entities within their borders. Hague Convention art. 2, 20 U.S.T. 361; see IACLR art. 4, 1438 U.N.T.S. 288. Venezuela's designated authority is the Ministry of Foreign Affairs (the "Ministry"), Bermuda's is the Registrar of the Supreme Court (the "Registrar"), and the United Kingdom's is the Senior Master of the Royal Courts of Justice.[5] These authorities receive letters rogatory or service packages from litigants abroad, deliver those packages to the intended parties, and then provide confirmation of service. See Hague Convention art. 3–6, 20 U.S.T. 361.

The Garnishees sent six service packages to the designated authorities for service under the Hague Convention. Four packages—all sent to Venezuela's Ministry—could not be delivered despite multiple attempts by the carriers. See ECF Nos. 482, 483, 486, 488. The other two packages were delivered—one to the Ministry and one to Bermuda's Registrar—but the Garnishees received no confirmation that the documents were served on the Third Parties. See ECF Nos. 484, 488. Process servers ABC Legal Services, Inc., and Judicial Process & Support, Inc., state that, in recent years, Venezuela's Ministry has not issued certificates of service for any of their service packages. See ECF Nos. 482, 483, 486, 488. The status of the Garnishees' service packages is summarized below.

---

[5] Venezuela – Central Authority & practical information, Hague Conf. on Priv. Int'l L. (HCCH), https://www.hcch.net/en/states/authorities/details3/?aid=280 (last updated Feb. 20, 2023); United Kingdom – Central Authority & practical information, Hague Conf. on Priv. Int'l L. (HCCH), https://www.hcch.net/en/states/authorities/details3/?aid=278 (last updated Apr. 19, 2022); United Kingdom – Other Authorities (Art. 18), Hague Conf. on Priv. Int'l L. (HCCH), https://www.hcch.net/en/states/authorities/details3/?aid=681 (last updated Apr. 19, 2022); Inter-American Convention on Letters Rogatory, Dep't of Int'l L. – OAS, https://www.oas.org/juridico/english/sigs/B-36.html (last visited Sept. 8, 2023).

| GARNISHEE | DEFENDANT(S) | CARRIER | AUTHORITY | STATUS |
|---|---|---|---|---|
| Citibank | - Banco de Venezuela | UPS | Ministry (Venezuela) | Carrier was unable to deliver service package to Ministry. |
| Citibank | - Petro San Felix<br>- Vassa<br>- Venfleet | UPS | Ministry (Venezuela) | Carrier was unable to deliver service package to Ministry. |
| Citibank | - Venfleet | FedEx | Registrar (Bermuda) | Service package delivered July 15, 2021. Registrar has not confirmed service on Venfleet. |
| SMBC | - Petrocedeño<br>- Petrowarao<br>- VHI | DHL | Ministry (Venezuela) | Carrier was unable to deliver service package to Ministry. |
| Equiniti | - Banco Bicentenario<br>- Banco de Venezuela | DHL | Ministry (Venezuela) | Carrier was unable to deliver service package to Ministry. |
| Equiniti | - Banco Bicentenario<br>- Banco de Venezuela | UPS | Ministry (Venezuela) | Service package delivered Dec. 3, 2021. Ministry has not confirmed service on Banco Bicentenario or Banco de Venezuela. |

See ECF Nos. 482, 483, 484, 486, 488.

In light of these issues, the Garnishees moved for alternative service on November 10, 2022. See ECF No. 477. Jiménez filed a brief opposing the motion on behalf of the Third Parties. See ECF No. 494. The Court thereafter requested additional briefing, which the parties provided. See ECF Nos. 519, 522, 523, 524, 526.

## DISCUSSION

The Garnishees have faced difficulties serving eight Venezuelan companies under the Hague Convention, so they want permission to serve them another way. They ask the Court to

5

authorize (1) personal delivery on the Third Parties by a Venezuelan law firm, (2) personal delivery by a Bermudan process server, and (3) service on United States counsel for the Third Parties. See ECF No. 478. The Court must determine whether these proposals comply with Rule 4, which sets different parameters for serving individuals, corporations, governments, and other types of litigants.

It is not immediately clear which of the Rule 4 parameters apply here. If the Third Parties are garden-variety foreign corporations, then Rule 4(f) governs. See Fed. R. Civ. P. 4(h)(2) (directing litigants to serve corporations outside the United States using certain methods from Rule 4(f)). But if the Third Parties are "agenc[ies] or instrumentalit[ies]" of Venezuela, Fed. R. Civ. P. 4(j)—that is, "separate legal persons" which are "organ[s] of" or majority-owned by a "foreign state or [its] political subdivisions," 28 U.S.C. § 1603(b)—they must be served under the Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended at 28 U.S.C. §§ 1330, 1391, 1441, 1602–11) (the "FSIA").

Even though answering this question would simplify service, the Court is reluctant to wade into the Third Parties' relationship to Venezuela.[6] Factual allegations in the complaint suggest that the Third Parties could be agencies or instrumentalities.[7] Other courts have

---

[6] Jiménez alternatively urges the Court to circumvent the agency-or-instrumentality issue by ruling on various motions to vacate and dismiss first. See ECF No. 494. Admittedly, if Jiménez's clients are successful on their jurisdictional arguments, the service issues may be moot. But it is not the Court's practice to put service on the backburner while it decides important questions in a case. To the contrary, doing so would undermine the purpose of service—"to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

[7] See, e.g., ECF Nos. 208 at ¶ 19 (Equiniti Complaint describing Banco Bicentenario and Banco de Venezuela as "owned or controlled by . . . a Venezuelan state-owned and controlled bank"), 225 at ¶¶ 31, 33 (Citibank complaint describing Banco de Venezuela as a "subsidiary" of a state-affiliated bank and asking the Court to determine whether "Banco de Venezuela is an agency or instrumentality of Venezuela"), 227 at ¶¶ 14, 19–21 (Citibank complaint alleging that Venezuela may own Petro San Felix, Vassa, and Venfleet and asking the Court to determine whether they are "agencies or instrumentalities of Venezuela"), 234 at ¶ 14 (SMBC complaint alleging that Petrocedeño is controlled by a state-owned company), 236 at ¶ 11 (same as to Petrowarao), 238 at ¶ 11 (same as to VHI).

described them in similar terms. See, e.g., Bancor Grp. v. Rodriguez, No. 22-cv-20201 (DPG)(EGT), 2022 WL 2916857, at *3 (June 14, 2022), adopted in relevant part by 2022 WL 2915887 (S.D. Fla. July 25, 2022) (describing Banco de Venezuela as "state-owned"). The parties have their own conflicting views. See ECF Nos. 522–24. At this stage, resolving the issue could be premature.

The Court instead authorizes service that is consistent with both Rule 4(f) *and* the FSIA. This moves the case forward without requiring the Court to investigate Venezuela's relationship to the Third Parties at this juncture. To that end, the Court analyzes whether alternative service is consistent with (1) Rule 4(f) and (2) the FSIA.

**I.    Rule 4(f)(3)**

Rule 4(f), by way of 4(h), permits parties to serve international entities "at a place not within any judicial district of the United States":

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>   (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
>   (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
>   (C) unless prohibited by the foreign country's law, by:
>
>       . . .
>
>       (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f), (h)(2) (excluding service by personal delivery under (f)(2)(C)(i)).

The Garnishees ask the Court to authorize alternative service under this last subsection, Rule 4(f)(3).[8] There is "no hierarchy among" Rule 4(f)'s options, United States v. Mrvic, __ F. Supp. 3d __, No. 21-cv-08792 (JLR), 2023 WL 375223, at *2 (S.D.N.Y. Jan. 24, 2023) (cleaned up), so service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief," Elsevier, Inc. v. Siew Yee Chew, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018) (cleaned up). Still, the proposed methods must comply with Rule 4 and the Constitution. Service must (1) be effectuated outside the United States; (2) use a method "not prohibited by international agreement"; and (3) comport with due process. Fed. R. Civ. P. 4(f)(3). Of the service methods proposed by the Garnishees, only one clears these hurdles.

### A. Personal Service in Venezuela Comports With Rule 4(f)(3)

The Court first applies Rule 4(f)(3)'s three-pronged test to the Garnishees' proposal to personally serve the Third Parties in Venezuela through local counsel. The first prong is plainly satisfied because service packages will be hand-delivered in Venezuela, outside the "judicial district[s] of the United States." Fed. R. Civ. P. 4(h)(2).

The second poses more of a challenge—ascertaining what methods of service are "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). The text of the Rule is deceptively broad. It appears to sweep in every service method not name-checked in an international convention. Yet as Judge Woods recently observed, Supreme Court precedent indicates that service methods "not specifically authorized" by the Hague Convention are barred by it. Smart Study Co. v. Acuteye-Us, 620 F. Supp. 3d 1382, 1393 (S.D.N.Y. 2022). This means that proper service under Rule 4(f)(3) turns on what international conventions allow.

---

[8] The Garnishees also discuss Rule 4(f)(2), but that subsection does not permit the Court to order alternative service. The Court therefore confines its analysis to Rule 4(f)(3).

The Hague Convention explicitly permits "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention art. 10(c), 20 U.S.T. 361. Courts have "construed" the phrase "other competent persons" to mean "individuals permitted to serve process in the country" where service will be made. Zamora v. JP Morgan Chase Bank, N.A., No. 14-cv-05344 (WHP)(SN), 2017 WL 2954680, at *3 (S.D.N.Y. June 21, 2017) (cleaned up). Proper service under Article 10(c) of the Hague Convention, then, turns on Venezuelan law.

Venezuelan law typically assigns "bailiffs (*alguaciles*) and notaries public" to perform personal service. ECF No. 479 at ¶ 17 (cleaned up). According to an experienced practitioner, the country's laws "do[] not expressly prohibit service of process through private individuals or attorneys licensed to practice in Venezuela" and such service "would be consistent with the Venezuelan laws regarding service of process." Id. at ¶¶ 24, 25; cf. Bybee v. Oper der Standt Bonn, 899 F. Supp. 1217, 1221 (S.D.N.Y. 1995) (relying on expert declaration stating that proposed service was "consistent with German law"). The Third Parties, through an opposition filed by Jiménez, agree. See ECF No. 524 at 9. Indeed, courts have previously approved service by court-appointed process servers in Venezuela. See Lumar Aviation, Inc. v. El Consorcio Venezolano de Industrias Auronauticas y Servicios Aereos, S.A. (CONVIASA), No. 16-cv-60200 (JEM)(AMOR), 2018 WL 3109625, at *1 (S.D. Fla. March 16, 2018) (authorizing service under § 1608(b)(3)(C)).

Collectively, these authorities establish that personal service by a designated law firm sufficiently complies with Venezuelan law. That, in turn, means it is covered by Article 10(c) of the Hague Convention and is "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). On this record, the second prong is satisfied.

So is the third. "[S]ervice . . . by personal delivery easily meets" the due process requirement that "notice be reasonably calculated to apprise interested parties of the pendency of the action." Burda Media, Inc. v. Viertel, 417 F.3d 292, 303 (2d Cir. 2005).

The Garnishees' proposed method of service accordingly comports with the requirements of Rule 4(f)(3). Zamora, 2017 WL 2954680, at *3 (approving service by "a licensed Colombian attorney"). All that remains is to analyze this method of service under the FSIA. See infra at 11–17.

B. **Personal Service in Bermuda**

The case for personal service in Bermuda is comparatively anemic. The Garnishees filed no affidavits explaining Bermudan service laws. And their briefing on the issue is no more than a conclusory sentence. See ECF No. 478 at 18. As such, the Court lacks the information it needs to evaluate whether service is "prohibited by international convention," as required under Rule 4(f)(3)'s first prong. The same holds true for the FSIA, which looks to the "law of the place where service is to be made." See infra at 12. The Garnishees' request to serve Venfleet by personal delivery in Bermuda is therefore denied without prejudice.

C. **Service on Counsel**

The Garnishees' proposal to serve the Third Parties' U.S. counsel, White & Case and Jiménez, also implodes.

It starts with the first prong, geography. As explained above, service on corporations under Rule 4(f)(3) must be made outside the United States. See Fed. R. Civ. P. 4(h)(2). Simple enough. But how this rule applies to serving a corporation's counsel has provoked debate. Some courts interpret it to preclude them from authorizing service on U.S.-based counsel altogether. See In re Fairfield Sentry Ltd., No. 10-13164 (SMB), 2020 WL 7345988, at *12 (Bankr. S.D.N.Y. Dec. 14, 2020), aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London, 630 F.

10

Supp. 3d 463 (S.D.N.Y. 2022) (collecting cases). Others sidestep the issue by recognizing that attorneys transmit service documents to their clients abroad and reasoning that in these circumstances, service is effectuated outside the United States. See id. (collecting cases); Sec. & Exch. Comm'n v. Unifund SAL, 910 F.2d 1028, 1034 (2d Cir. 1990) (rejecting challenge to service on U.S. counsel under analogous Rule 4(i) because "process . . . was forwarded to [the defendant] in Beirut"). Following the "majority view," In re Fairfield Sentry, 2020 WL 7345988, at *12, the Court concludes that "permitting service on . . . United States counsel does not contravene the language of Rule 4(f), since service [would] be completed outside the United States," Vega v. Hastens Beds, Inc., 342 F.R.D. 61, 66 (S.D.N.Y. 2022).

Solving that problem, however, creates another. Addressing the second prong, the Garnishees argued that service on counsel is "not prohibited by international agreement" because no international agreement applies to service that "'occurs domestically[] and does not involve transmission of documents abroad.'" ECF No. 478 at 20 (quoting Jian Zhang v. Bauidu.com Inc., 293 F.R.D. 508, 515 (S.D.N.Y. 2013)). But if the Court, like the majority of its colleagues, construes service on counsel as being completed outside the United States, then the Garnishees cannot invoke that loophole. They must instead demonstrate that service on counsel is not barred—read: is "explicitly authorized"—by the Hague Convention or the IACLR. Smart Study, 620 F. Supp. 3d at 1393. They have not done so.

These issues are not isolated to service under Rule 4(f)(3). Alternative service under the FSIA implicates questions of foreign law which are likewise left unanswered. The Garnishees' request to serve the Third Parties via White & Case and Jiménez is, therefore, denied.

## II. The FSIA

The FSIA directs litigants to serve agencies or instrumentalities of foreign states:

11

    (1)    by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

    (2)    if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

    (3)    if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state--

        (A)    as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request, or

        (B)    by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

        (C)    as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b).

Unlike with Rule 4(f), these mechanisms are "hierarchical." Howe v. Embassy of It., 68 F. Supp. 3d 26, 32 (D.D.C. 2014). That is, a litigant must "attempt and fail at service" under subsection (1) before pursuing service under subsection (2). Holladay v. Islamic Republic of Iran, 406 F. Supp. 3d 55, 63 (D.D.C. 2019). Once both methods (1) and (2) are exhausted, any of the methods described in (3)(A), (3)(B), and (3)(C) may be used. Id.; see In re Terrorist Attacks on Sept. 11, 2001, No. 03-md-01570 (GBD)(SN), 2022 WL 1088567, at *6 (S.D.N.Y. Apr. 5, 2022). The Court analyzes these methods in order.

    A.    **Service Under § 1608(b)(1) Is Unavailable**

We begin with § 1608(b)(1): service "in accordance with any special arrangement" between the parties. The Garnishees tried to make such arrangements but received conflicting responses from White & Case and Jiménez. Compare ECF Nos. 290, 291, 292, 305, 306 (White

12

& Case service waivers), with ECF Nos. 480 at ¶¶ 9, 12; 481 at ¶¶ 7, 11–12; 485 at ¶ 7; 487 at ¶¶ 3–4 (describing Jiménez's refusals to accept or waive service). Given this confusion, neither the Court nor the Garnishees can assume that any service arrangements made with counsel have truly been approved by the Third Parties. Service by special arrangement under § 1608(b)(1) is thus unavailable and the Garnishees are free to use § 1608(b)(2). See Doe I v. Israel, 400 F. Supp. 2d 86, 101 (D.D.C. 2005) (finding service under the analogous § 1608(a)(1) unavailable where plaintiffs asked defendants to waive service and defendants refused).

### B. The Garnishees Exhausted Service Under § 1608(b)(2)

We look next to § 1608(b)(2): service on "any . . . agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents." The Garnishees address this provision in two ways: (1) they ask the Court to designate White & Case and Jiménez to accept service on behalf of the Third Parties, see ECF No. 522 at 9–10; and (2) if that fails, they ask the Court to find that service "cannot be made" under § 1608(b)(2), see id. at 10–11.

First, the Court rejects the Garnishees' request to designate an "agent" to accept service on behalf of the Third Parties. The agents described in § 1608(b)(2) must be "authorized by appointment or by law"—a qualification that at first blush could encompass designation by a court. Id. But identical language in other service provisions has long been interpreted to refer to "appointment by the unserved party, not a court." Fed. Ins. Co. v. Caldera Med., Inc., No. 15-cv-00393 (SVW)(PJW), 2015 WL 12655601, at *1 (C.D. Cal. Apr. 8, 2015) (interpreting identical language in Rule 4(e)(2)); accord Bogle-Assegai v. Connecticut, 470 F.3d 498, 507 (2d Cir. 2006) (finding service inadequate under Rule 4(e)(2) because the unserved party "had not authorized anyone to accept personal service"). "And authorization by law flows from legislation, not court order." Fed. Ins., 2015 WL 12655601, at *1; accord Nelson v. Swift, 271

13

F.2d 504, 505 (D.C. Cir. 1959) ("The phrase 'by law' refers to statutory provisions for substituted service."). The only agents that may be served under § 1608(b)(2) are those selected by the Third Parties or by statute.

Second, the Court endorses the Garnishees' alternative argument that service "cannot be made" on an agent or under international convention. § 1608(b)(3). To begin, there are no agents in the United States with the authority required by § 1608(b)(2). White & Case and Jiménez are the most promising candidates, but any authority to accept service they received from the Third Parties is murky at best, and the Garnishees cite no statute that would give counsel that power. Service on an agent is therefore "categorically unavailable." Neuhauser v. Bolivarian Republic of Venezuela, No. 20-cv-10342 (AT), 2023 WL 4350614, at *2 (S.D.N.Y. July 3, 2023) (discussing exhaustion under § 1608(a)).

Service by international convention is likewise "impossible or impractical." Daly v. Castro Llanes, 30 F. Supp. 2d 407, 416 (S.D.N.Y. 1998) (discussing the standard for exhausting methods of service under § 1608(b)(2)). As explained above, the Garnishees attempted to serve the Third Parties in Venezuela and Bermuda by shipping six service packages to the authorities designated under the Hague Convention and the IACLR. See ECF Nos. 482, 483, 484, 486, 488. Only two were delivered—an Equiniti package sent to Venezuela's Ministry and a Citibank package shipped to Bermuda's Registry. See ECF Nos. 484, 488. The authorities should have served those packages on the relevant Third Parties and then sent confirmation to the Garnishees. See Hague Convention art. 3–6, 20 U.S.T. 361. No such confirmation was forthcoming. See ECF Nos. 484, 488.

These barriers come as no surprise in Venezuela, where diplomatic "tensions" make service "virtually impossible." New Eng. Merchs. Nat'l Bank v. Iran Power Generation &

14

Transmission Co., 495 F. Supp. 73, 76 (S.D.N.Y. 1980). According to two veteran process servers, the Ministry consistently refuses to accept or serve Hague Convention packages sent by United States litigants. See ECF Nos. 482, 483, 486, 488. There is no reason to believe that IACLR letters rogatory sent to the same Ministry would be treated any differently. As this record shows, serving the Third Parties in Venezuela via either the Hague Convention or the IACLR is ineffectual.

Service on Venfleet's address in Bermuda presents a closer question, but one that ultimately resolves in favor of Garnishee Citibank. Unlike with Venezuela, there is no indication that Bermuda's Registrar has a policy or practice of refusing to deliver service packages. Nor did Citibank pursue (or address the possibility of) serving Venfleet through the United Kingdom's Central Authority. See Hague Convention art. 18, 20 U.S.T. 361 (giving litigants "the right to address a request directly to the Central Authority"). None of that is strictly necessary to prove exhaustion, however. "[S]ubstantial" "compliance" with § 1608(b) is all that is required. First City, Tex.-Hous., N.A. v. Rafidain Bank, 281 F.3d 48, 55 (2d Cir. 2002). Here, Citibank's "reasonable efforts" to serve Venfleet in Bermuda have for some reason been thwarted. Hawkeye Gold, LLC v. China Nat'l Materials Indus. Imp. & Exp. Corp., No. 16-cv-00355 (JAJ), 2017 WL 10153534, at *4 (S.D. Iowa Sept. 6, 2017). That is enough to find that service under international law in Bermuda is "impractical." Daly, 30 F. Supp. 2d at 416; see, e.g., ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela, 628 F. Supp. 3d 1, 8–9 (D.D.C. 2022) (finding service by international convention under § 1608(a)(3) unavailable where party mailed service package to Ministry but received no confirmation of service).

Altogether, the record shows that the Garnishees have exhausted the service methods described in § 1608(b)(2). They are thus free to serve the Third Parties under § 1608(b)(3).

### C. Personal Service In Venezuela Comports With § 1608(b)(3)

We turn finally to § 1608(b)(3)—specifically, § 1608(b)(3)(C): delivery of the "summons and complaint, together with a translation of each into the official language of the foreign state" in any manner "directed by order of the court" that is both (1) "reasonably calculated to give actual notice" and (2) "consistent with the law of the place where service is to be made." Personal service on the Third Parties in Venezuela meets these conditions.[9]

First, as observed before, "service of process by personal delivery easily meets" the requirement that "notice be reasonably calculated to apprise interested parties of the pendency of the action." Burda Media, 417 F.3d at 303 (cleaned up).

Second, personal delivery by a lawyer is "consistent" with the laws of Venezuela. § 1608(b)(3)(C). A method of service is "consistent" if it is "not prohibited under" the country's laws—there is no requirement that it be "identical to the method prescribed by the foreign state." New Eng. Merchs. Nat'l Bank, 495 F. Supp. at 79. Here, the Garnishees' practitioner states that although Venezuelan courts serve documents through "bailiff[s] (*Aguacil*[*es*]) or notar[ies] public," personal delivery by a law firm appointed by the Court as a special process server is "consistent with the Venezuelan [service] laws." ECF Nos. 479 at ¶ 17, 19, 25. The Third Parties, through Jiménez, agree. See ECF No. 524 at 9. The Court is therefore satisfied that personal delivery complies with this component of § 1608(b)(3)(C). See Lumar Aviation, 2018 WL 3109625, at *1 (approving personal delivery in Venezuela by a court-appointed process server under § 1608(b)(3)(C)).

For these reasons, personal service on the Third Parties in Venezuela comports with the FSIA as well as Rule 4(f)(3) and is reasonably calculated to apprise each Third Party of this

---

[9] For the reasons stated above, *supra* at 10–11, the Court declines to analyze the Garnishees' other proposed service methods under § 1608(b)(3)(C).

action. The Court therefore appoints D'Empaire Reyna Abodagos as a special process server to hand-deliver copies of the "summons and complaint, together with a translation of each" to the Third Parties in Venezuela. § 1608(b)(3)(C).

## CONCLUSION

The Court GRANTS in part and DENIES in part the Garnishees' motion. The Garnishees shall serve the Third Parties as directed in this Opinion and Order within 180 days.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 477.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   September 22, 2023
         New York, New York